EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Reliable Financial Services, Inc.<br><br>Recurrido<br><br>v.<br><br>Departamento de Justicia de Puerto Rico y Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | 2016 TSPR 140<br><br>195 DPR ____ |

Número del Caso: CC-2014-297

Fecha: 29 de junio de 2016

Tribunal de Apelaciones:

Región Judicial de Carolina y Humacao, Panel IX

Oficina del Procurador General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Lcda. Karla Z. Pacheco Álvarez
Subprocuradora General

Lcda. Carmen A. Riera Cintrón
Procuradora General Auxiliar

Abogados del Recurrido:

Lcdo. Luis Rivera-Martínez
Lcdo. Julio R. Calderín García

Materia: Ley Uniforme de Confiscaciones - Cuando surge la obligación del Estado de notificar la confiscación de un vehículo de motor a un acreedor condicional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reliable Financial
Services, Inc.

    Recurrido

        v.                    CC-2014-297      Certiorari

Departamento de Justicia de
Puerto Rico y Estado Libre
Asociado de Puerto Rico

    Peticionarios

Opinión del Juez del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 29 de junio de 2016.

El caso de autos requiere que determinemos si la obligación del Estado de notificar la confiscación de un vehículo de motor a un acreedor condicional surge con la debida presentación de una Solicitud de Presentación de Gravamen Mobiliario sobre Vehículos de Motor (Solicitud de gravamen) ante el Departamento de Transportación y Obras Públicas (DTOP) o si el referido requisito surge cuando el propio Estado finalmente culmina el proceso e inscribe el gravamen ante el Registro de Vehículos de Motor, Arrastres y Semiarrastres (Registro) del propio DTOP, de conformidad a la

Ley Núm. 119-2011, mejor conocida como la Ley Uniforme de Confiscaciones de 2011, según enmendada, 34 LPRA secs. 1724-1724w.

I

Reliable Financial Services, Inc. (Reliable o recurrida) es una compañía de financiamiento que otorgó varios contratos de venta al por menor a plazos y gravámenes mobiliarios sobre unos vehículos de motor que posteriormente fueron confiscados por el Estado. Oportunamente, y de conformidad con la Ley Núm. 208-1995, mejor conocida como la Ley de Instrumentos Negociables y Transacciones Comerciales, Reliable presentó para inscripción los gravámenes de los vehículos en controversia ante el Registro del DTOP. En fechas posteriores a la respectiva otorgación de los contratos y la presentación de estos gravámenes, cada uno de estos vehículos fue incautado por parte del Estado. Sin embargo, Reliable no fue notificado de ninguna de las confiscaciones por parte del Estado de estos vehículos financiados.

A continuación, los datos relevantes sobre cada uno de los 6 vehículos confiscados en controversia:

1. Ford Fusion de 2006 con número de tablilla GMJ-763 y número de motor 3FAFP07186R112211. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 26 de febrero de 2009. Este vehículo fue incautado para confiscación el 29 de marzo de 2009. Es decir, los documentos se presentaron

ante el DTOP 31 días antes de la incautación. Reliable no fue notificada de esta incautación.

2. Nissan Pathfinder de 2001 con tablilla ESL-782 y número de identificación JN8AR09X21W580400. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 21 de agosto de 2007. Este vehículo fue incautado para confiscación el 5 de diciembre de 2008. Es decir, los documentos se presentaron ante el DTOP 1 año y 4 meses antes de la incautación. Reliable no fue notificada de esta incautación.

3. Mazda B2300 de 2006 con tablilla 815-127 y número de identificación 4F4YR12D36PM03752. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 25 de noviembre de 2008. Este vehículo fue incautado para confiscación el 16 de diciembre de 2008. Es decir, los documentos se presentaron ante el DTOP 21 días antes de la incautación. Reliable no fue notificada de esta incautación.

4. Toyota Echo de 2005 con tablilla FSH-567 y número de identificación JTDAT123050364936. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 8 de mayo de 2006. Este vehículo fue incautado para confiscación el 25 de agosto de 2006. Es decir, los documentos se presentaron ante el DTOP 3 meses y 17 días antes de la incautación. Reliable no fue notificada de esta incautación.

5. Volkswagen Jetta de 2002 con tablilla EOR-491 y número de identificación 3VWSB69M72M023610. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 21 de junio de 2006. Este vehículo fue incautado para confiscación el 2 de noviembre de 2006. Es decir, los documentos se presentaron ante el DTOP 4 meses y 12 días antes de la incautación. Reliable no fue notificada de esta incautación.

6. Mitsubishi Lancer de 2008 con tablilla HEJ-858 y número de identificación JA3AAU16U18U030796. Los documentos para la inscripción del gravamen mobiliario fueron presentados en el Registro el 13 de diciembre de 2007. En este vehículo el Registro refleja 4 transacciones para el 30 de julio de 2008. Estas son: 1) registro de gravamen a favor de Reliable; 2) gravamen de vehículo de gobierno; traspaso a favor del Municipio de Barceloneta, y 4) cambio de tablilla de HEJ-858 a

la tablilla Municipal MU-9241. Reliable no fue notificada de esta incautación.

Así las cosas, el 18 de enero de 2010, Reliable presentó una demanda sobre impugnación de confiscación contra el Departamento de Justicia (peticionario). En la misma, alegó que la acción del Estado era nula puesto que la Junta de Confiscaciones del Departamento de Justicia no le había notificado sobre la confiscación de los vehículos, a pesar de haber presentado su Solicitud de gravamen ante el DTOP previo a que se llevaran a cabo las confiscaciones. En esencia, alegó que el incumplimiento de notificación por parte del Estado violaba lo dispuesto en la Ley Uniforme de Confiscaciones de 2011, *supra*. En su demanda, Reliable solicitó $106,540.84 como valoración por los vehículos de motor confiscados más las costas y honorarios de abogados.

Por su parte, el Departamento de Justicia presentó una moción de desestimación en la cual principalmente arguyó que no estaba obligado a notificar sobre las confiscaciones a Reliable, pues al momento de efectuarse las incautaciones, el Registro no reflejaba los gravámenes a favor de la recurrida. Además, alegó que estos gravámenes no eran efectivos hasta tanto el DTOP los hiciera formar parte del Registro y no cuando el solicitante los presenta para inscripción.

Luego de varias audiencias y escritos dispositivos, el Tribunal de Primera Instancia dispuso de la

controversia mediante el mecanismo de sentencia sumaria. Esa Sentencia fue notificada el 24 de junio de 2013. En la misma, el foro de instancia decretó que estas confiscaciones eran nulas por no haberse notificado a Reliable en el término establecido por ley. Por ello, ordenó al Estado a pagar los balances pendientes en cada uno de los contratos de venta condicional de los vehículos confiscados con Reliable.[1] El Estado solicitó reconsideración de la Sentencia, la cual fue denegada mediante una Resolución notificada el 19 de julio de 2013.

Así las cosas, el 17 de septiembre de 2013, el Estado presentó un recurso de apelación ante el Tribunal de Apelaciones. En su escrito, planteó que la confiscación no era nula por falta de notificación a Reliable debido a que el gravamen no estaba inscrito al momento en que se llevó a cabo la incautación. Además, alegó que no procedía dictar sentencia sumaria por existir controversias de hechos. Por último, arguyó que no procedía el pago de los balances pendientes de los contratos, sino la devolución del automóvil o, en su defecto, el valor de tasación de estos al momento de la confiscación.

El 9 de diciembre de 2013, el Tribunal de Apelaciones notificó su Sentencia, en la cual confirmó la nulidad de la confiscación por falta de notificación a

---

[1] *Sentencia del Tribunal de Primera Instancia*, Apéndice del recurso, págs. 30-51.

Reliable. Ello pues, razonó que Reliable demostró que había sido diligente al presentar los documentos para la inscripción del gravamen antes de que se efectuaran las confiscaciones y que el Estado no presentó documentos que los controvirtieran. Además, concluyó que la obligación de **notificar del Estado** surge una vez se presentan los documentos necesarios para la inscripción del gravamen y no cuando el Estado finalmente los procesa. En fin, concluyó que Reliable fue diligente al cumplir con los requisitos de presentación, por lo que no debía penalizársele por la tardanza del personal del DTOP en inscribir sus gravámenes. No obstante, el foro apelativo intermedio modificó la partida concedida a Reliable en cuanto al balance pendiente de los contratos y ordenó, en cambio, a que el Estado restituyera el valor de los vehículos al momento de la confiscación. El 26 de diciembre de 2013, el Estado presentó una moción de reconsideración, cuya denegatoria fue notificada el 13 de febrero de 2014.

Aún inconforme, el 14 de abril de 2014 el Estado presentó el recurso de *certiorari* de epígrafe, en el cual sostiene que se cometió el siguiente error:

> **Erró el Tribunal de Apelaciones al confirmar la sentencia sumaria dictada por el Tribunal de Primera Instancia, que decretó la nulidad de la confiscación de vehículos objeto de la controversia por no haber notificado tal hecho al acreedor condicional, a pesar de que a la fecha de las notificaciones no estaba**

**registrado dicho gravamen de venta condicional en el Registro de Vehículos de Motor del DTOP.**

## II

La confiscación es el acto de ocupación y de investirse para sí el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de ciertos delitos. Por su parte, la Sec. 7 del Art. II de nuestra Constitución, al igual que las Enmiendas Quinta y Décimocuarta de la Constitución de los Estados Unidos, garantiza que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.[2] En lo relacionado a los vehículos de motor, hemos resuelto que la confiscación de un vehículo constituye una privación de la propiedad que obliga al Estado a cumplir con las garantías mínimas del debido proceso de ley.[3] La notificación adecuada es uno de los preceptos del debido proceso de ley en su modalidad procesal.[4]

Con ello en mente, la Asamblea Legislativa aprobó la Ley Núm. 119-2011, mejor conocida como la Ley Uniforme de Confiscaciones de 2011.[5] En la misma "[s]e establece como política pública del Estado Libre Asociado el crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles. Asimismo,

---

[2] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

[3] Santiago v. Supte. Policía de P.R., 151 DPR 511, 517 (2000).

[4] Río Const. Corp. v. Mun. de Caguas, 155 DPR 394 (2001).

[5] MAPFRE v. ELA, 188 DPR 517, 527 (2013).

estos mecanismos **deben velar por los derechos y reclamos de las personas afectadas por una confiscación**.[6] (Énfasis suplido).

Así, la Ley Uniforme de Confiscaciones de 2011, *supra*, dicta la manera en que se notificará el hecho de la confiscación a las partes con interés. El propósito de esta notificación es salvaguardar los derechos constitucionales de una parte interesada en la propiedad confiscada, de manera que se le pueda brindar la oportunidad para que presente y pruebe todas las defensas válidas pertinentes a su reclamo.[7] Por otra parte, el incumplimiento con el término para notificar una confiscación provoca la nulidad de la acción del Estado.[8] Ello es así pues, el deber del Estado de notificar la confiscación a las partes con interés es un requisito fundamental del debido proceso de ley.[9]

Las confiscaciones en el caso de autos fueron realizadas e impugnadas en el tribunal antes de la adopción de la Ley Uniforme de Confiscaciones de 2011, *supra*, por lo que resulta prudente determinar y discutir el derecho vigente al momento de los hechos.

---

[6] Art. 2 de la Ley Núm. 119-2011, mejor conocida como la Ley Uniforme de Confiscaciones de 2011, según enmendada (Ley 119).

[7] López v. Secretaria, 162 DPR 345, 352 (2004).

[8] Coop. Seguros Múltiples v. Srio. De Hacienda, 118 DPR 115, 118 (1986).

[9] First Bank v. E.L.A., 164 DPR 835, 853 (2005).

El Art. 3 de la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988, establecía a quiénes se les debía notificar una confiscación. Específicamente, el referido artículo de la ley prescribía el procedimiento a seguir cuando la propiedad que se confiscaba era un vehículo de motor que alegadamente había sido utilizado en la comisión de un delito. En dichos casos, el funcionario bajo cuya autoridad se efectuaba la ocupación estaba obligado a notificar este hecho al dueño según constara en el Registro de Vehículos del DTOP, **al acreedor condicional que a la fecha de la ocupación hubiese presentado su contrato para ser archivado en este Registro** y, en algunos casos, al acreedor hipotecario.

Ahora bien, como anticipamos, la disposición anterior fue derogada por la Ley Uniforme de Confiscaciones de 2011, aprobada el 12 de julio de 2011. En lo pertinente, el texto del Art. 13 (c) de la nueva ley requiere que se notifique la confiscación y la tasación de la propiedad confiscada "al acreedor condicional que a la fecha de la ocupación **tenga su contrato inscrito**" en el Registro de Vehículos del DTOP.[10] (Énfasis suplido). La nueva ley no explicó la razón del cambio en el lenguaje sobre notificación de acreedores condicionales. Sin embargo, en la Exposición de Motivos de la Ley se dispuso que:

---

[10] 34 LPRA sec. 1724j.

> [s]on varias las disposiciones legales que hay que tener presente al establecer normas en cuanto al acto de confiscación. Entre tales disposiciones se encuentra el Artículo II, Sección 7 de nuestra Constitución, que reconoce el derecho a la vida, a la libertad y al disfrute de la propiedad. Además, establece que ninguna persona será privada de su libertad y propiedad sin un debido proceso de ley.[11]

Independientemente de la fecha en la que se realizó la confiscación, hay que notar que la Ley Uniforme de Confiscaciones de 2011, *supra*, establece su vigencia inmediata al momento de su aprobación y la misma aplicará retroactivamente a "aquellos procedimientos que se hayan iniciado en virtud de los procedimientos de confiscación bajo la Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como Ley Uniforme de Confiscaciones de 1988".[12]

Así las cosas, la Ley Uniforme de Confiscaciones de 2011, *supra*, fue posteriormente enmendada por la Ley Núm. 252-2012 para modificar ciertos artículos, entre estos el Art. 13. El propósito del cambio fue para establecer el término de 90 días como tiempo máximo para que el Estado culmine la investigación y expida la orden de confiscación. Sin embargo, a pesar de haber enmendado la disposición a los fines de limitar el poder del Estado y reconocer el derecho a la propiedad del afectado, el

---

[11] Exposición de Motivos de la Ley 119.

[12] Art. 28 de la Ley 119, 34 LPRA 1724w.

lenguaje sobre notificación de acreedores condicionales quedó inalterado. Es decir, tanto la Ley de 2011 como su posterior enmienda disponían según el lenguaje utilizado de que se deberá notificar a los acreedores que tengan su contrato **"inscrito"**.

Posteriormente, la referida ley fue enmendada nuevamente por la Ley Núm. 262-2012. Esta vez, a los efectos de aclarar la definición del término "dueños" y a su vez eliminar el requisito previo de prestar una garantía en el caso de que una compañía aseguradora presentara una demanda de impugnación de confiscación. Así, en su exposición de motivos, la enmienda establece —en lo pertinente— que:

> Las normas establecidas en la Ley 119 tomaron en cuenta, entre otros, en el mandato constitucional establecido en el Artículo II, Sección 7, de nuestra Constitución que reconoce el derecho a la vida, a la libertad y al disfrute de la propiedad y que ninguna persona será privada de su libertad y propiedad sin un debido proceso de ley. Considerando las referidas protecciones constitucionales, la Ley 119 crea un procedimiento para el cual se contempló garantizar el debido proceso de ley a todo dueño de bienes confiscados.
>
> No obstante, la Ley 119 no definió con precisión las personas que se consideran "dueños" de un determinado bien para propósitos de asegurar las protecciones constitucionales antes mencionadas a pesar que en diversas instancias de la misma se reconoce el derecho a "personas con interés en la propiedad." A esos fines, la Ley 119 no establece con claridad que los acreedores garantizados por un bien sujeto a incautación poseen un "interés propietario" en dicho bien que de acuerdo a la jurisprudencia vigente les

convierte en un "dueño inocente" a los cuales se extienden las garantías constitucional antes expresadas. <u>Del Toro Lugo v. Estado Libre Asociado de Puerto Rico</u>, 136 DPR 973 (1994); <u>First Bank, Universal Insurance Company v. Estado Libre Asociado de Puerto Rico</u>, 156 DPR 77 (2002). Es decir, lo que no logra la Ley es parear el reconocimiento que se da a aquellas personas con interés en la propiedad como hemos apuntado, y el reclamo legítimo que pudieran hacer éstos por sí mismos.

Con el propósito de aclarar dicha situación, esta Asamblea Legislativa entiende necesario se incorpore a la Ley 119 una definición de "dueño" en la que, en línea con la normativa federal sobre el asunto de las confiscaciones y según establecido por el Tribunal Supremo de Puerto Rico, se reconozca el interés propietario de los acreedores que posean un gravamen inscrito sobre el bien sujeto a la confiscación en el momento de su ocupación.

Entendemos que de esta forma quedan debidamente protegidos los derechos propietarios de estas partes con interés en armonía con lo dispuesto en nuestra Constitución y con los intereses del Estado protegidos por la referida Ley 119.[13]

Ciertamente, podemos distinguir que la intención de la Asamblea Legislativa en las enmiendas va encaminada a reconocer los derechos constitucionales de aquellos *terceros inocentes* con un interés propietario que se ve afectado por la confiscación. En esta ocasión, particularmente, es de notar que la Asamblea Legislativa realizó acciones afirmativas específicamente a los fines de incluir a los acreedores garantizados en la definición

---

[13] Exposición de Motivos de la Ley Núm. 262-2012.

de **"dueños"** en la Ley Uniforme de Confiscaciones de 2011, *supra*.

Por nuestra parte, en <u>MAPFRE v. ELA</u>, 188 DPR 517, 526 (2013), este Tribunal examinó una controversia suscitada bajo la Ley de Confiscaciones de 2011, *supra*, luego de las enmiendas del 2012. En ese caso, hicimos un recuento en el cual expusimos la normativa en cuanto a la derogada Ley Uniforme de Confiscaciones de 1988 y explicamos que se debería notificar la confiscación "al acreedor condicional que a la fecha de la ocupación hubiese **presentado** su contrato para archivarlo en el registro". (Énfasis suplido). Ahora bien, en el caso antes mencionado este Tribunal no examinó si la mera presentación de los documentos requeridos por la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, le imponía la obligación al Estado de notificar al acreedor condicional que presentó una Solicitud de gravamen ante el DTOP. La razón por la cual no se examinó el nuevo texto de la ley se debió a que el gravamen del vehículo del cual se impugnó la confiscación ya estaba inscrito en el Registro.

A pesar de que esta Curia ha determinado que la notificación a cada una de esas personas persigue el propósito de salvaguardar los derechos constitucionales de una parte que tiene algún interés en la propiedad confiscada, para brindarle la oportunidad de argumentar y probar las defensas válidas que pueda tener, la Asamblea Legislativa no ha expresado la razón por la cual se ha

sustituido el término "inscrito" en lugar de "presentado" en lo relativo al gravamen. Esto a pesar de que por décadas éste fuera nuestro estado de Derecho. Para entender el significado del término, debemos estudiar a fondo la figura del gravamen mobiliario por venta condicional y su marco legal.

**Ley de Transacciones Comerciales**

En nuestra jurisdicción, la inscripción de los gravámenes mobiliarios por venta condicional está regulada por la Ley Núm. 208-1995, mejor conocida como la Ley de Transacciones Comerciales, 19 LPRA sec. 401 *et seq*. Las disposiciones que atañen específicamente al perfeccionamiento de un gravamen mobiliario sobre los vehículos de motor al momento de los hechos del caso fueron posteriormente derogadas por la Ley Núm. 21-2012. Sin embargo, la nueva ley fue aprobada el 17 de enero de 2012 y no tiene vigencia retroactiva, por lo que debemos aplicar las disposiciones vigentes al momento de la acción judicial que revisamos. En lo pertinente, la derogada Sec. 9-413, 19 LPRA sec. 2163, aplicable a nuestro caso, disponía lo siguiente:

> Cuando se establezca un gravamen mobiliario sobre un vehículo de motor, […] [este] quedará perfeccionado cuando se registre en el Registro de Vehículos de Motor y Arrastres del Departamento de Transportación y Obras Públicas […], según el procedimiento provisto en dicha ley [la Ley de Vehículos y Tránsito de Puerto Rico]; a menos que en los casos de un vehículo de motor sin certificado de título o licencia del vehículo

expedida por Puerto Rico u otra jurisdicción, el gravamen mobiliario será perfeccionado únicamente cuando la declaración de financiamiento sea radicada en la oficina del Secretario de Estado, según dispone la sec. 2151 de este título. Así también se efectuará e inscribirá el traspaso de vehículos de motor y arrastres en dicho Registro de Vehículos de Motor y Arrastres del Departamento de Transportación y Obras Públicas según se dispone en las secs. 301 et seq. del Título 9, Ley de Vehículos y Tránsito de Puerto Rico.

En cuanto al registro de gravámenes, la Ley Núm. 22-2000, mejor conocida como la Ley de Vehículos y Tránsito de Puerto Rico, según enmendada, 9 LPRA sec. 5001 et seq., (Ley 22) es el marco legal relacionado a los vehículos de motor en Puerto Rico. Específicamente, el Art. 2.05 de la Ley 22, 9 LPRA sec. 5006, le impone la obligación al Secretario de Transportación y Obras Públicas de establecer y mantener "un **registro actualizado** de todos los vehículos de motor, arrastres o semiarrastres autorizados a transitar por las vías públicas". Esta ley establece que con relación a los vehículos de motor, el Registro contendrá la (1) descripción del vehículo de motor; (2) la información del dueño; (3) **"[c]ualquier acto de enajenación o gravamen relacionado con el vehículo […] o su dueño y/conductor certificado"**, y (4) "[c]ualquier otra información necesaria para darle efecto a las

disposiciones de est[a] [ley], o de cualesquiera otras leyes aplicables".[14]

Este asunto queda, a su vez, regulado por el Reglamento 7357 de 14 de mayo de 2007, conocido como Reglamento para la imposición y cancelación de gravámenes bajo la Ley de Vehículos y Tránsito (Reglamento). Este Reglamento define el gravamen mobiliario por venta condicional como "todo gravamen en virtud del cual se crea un derecho sobre propiedad mueble perteneciente a otra persona". Además, impone como requisito que todo gravamen anotado en el Registro será impuesto y cancelado de acuerdo con las especificaciones y requisitos impuestos en el Reglamento.

Particularmente, el Art. VIII del Reglamento requiere, **como únicos requisitos**, que para inscribir un gravamen a favor del acreedor garantizado, éste o su representante tiene que presentar los siguientes documentos:

a. Formulario DTOP-770 "Solicitud Presentación Gravamen Mobiliario sobre Vehículos de Motor", debidamente completado (Véase Anejo IV)

b. Copia de los Comprobantes de Pago de Rentas Internas del Departamento de Hacienda, correspondientes a los derechos de anotación del gravamen mobiliario, con el valor de cinco ($5.00) dólares.

c. Copia de la hoja del documento del contrato de venta al por menor a plazos, que evidencie

---

[14] 9 LPRA sec. 5006.

el monto del precio de venta del vehículo de motor.

**III**

El peticionario alega que los foros recurridos erraron al decretar que las confiscaciones de vehículos de motor fueron nulas. Para llegar a esta conclusión, razona que no estaba obligado a notificarle a Reliable sobre las confiscaciones debido a que sus gravámenes estaban presentados, pero aún no estaban "inscritos" en el Registro del DTOP por parte de la agencia encargada.

Antes de examinar la controversia presentada debemos examinar las disposiciones legales que son aplicables a la demanda de impugnación de confiscación presentada por Reliable. En primer lugar, la Ley Uniforme de Confiscaciones de 1988 estaba vigente al momento en que el Estado realizó las confiscaciones, incluso al momento de entablar la acción legal que hoy nos ocupa. Dicha ley requería que el Estado notificara "al acreedor condicional que a la fecha de la ocupación **haya presentado su contrato** para ser archivado". (Énfasis suplido).

Sin embargo, mientras se atendía el reclamo de Reliable, se enmendó la ley. Así, en este caso debemos aplicar la Ley Uniforme de Confiscaciones de 2011 porque la misma aplicaba retroactivamente a procedimientos "que se hayan iniciado en virtud de [la] "Ley Uniforme de Confiscaciones de 1988". Es decir, las confiscaciones ocurrieron bajo la vigencia de la Ley de 1988, pero la Ley

de 2011 entró en vigor mientras el caso estaba pendiente de ser resuelto, por lo que al aplicar <u>bajo las particularidades de este caso procedemos a resolver conforme a ésta</u>. El lenguaje utilizado por la Asamblea Legislativa requiere que el Estado notifique la confiscación "al acreedor condicional que a la fecha de la ocupación tenga su contrato **inscrito**" en el Registro del DTOP.

Como observamos, la Ley de 2011 realizó un cambio en el texto sobre notificación a los acreedores condicionales. A pesar de este cambio en el texto de la ley, no se provee justificación en la propia ley ni en la intención de la Asamblea Legislativa para dicho cambio. No obstante, lo que sí surge claramente del texto es que esta disposición fue aprobada a los fines de diseñar los "mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles. Asimismo, estos mecanismos **deben velar por los derechos y reclamos de las personas afectadas por una confiscación**".[15] (Énfasis suplido). Por su parte, la mencionada disposición ha sufrido varias enmiendas, en todas ellas se reitera la importancia de salvaguardar los derechos propietarios de los afectados. Por ello, el lenguaje no debe ser interpretado de manera que desvirtúe el propósito que promulgó la creación de dicha ley, al igual que del

---

[15] Art. 2 de la Ley Núm. 119-2011.

Registro del DTOP y, particularmente la función de la notificación en los casos de confiscaciones.

La Ley de Transacciones Comerciales regula cómo se perfeccionará un gravamen mobiliario sobre un vehículo de motor. No obstante, esta ley no define directamente el mecanismo de perfeccionamiento del gravamen. Por el contrario, se dispone que el gravamen "quedará perfeccionado cuando se registre en el Registro de Vehículos de Motor y Arrastres del [DTOP] […], **según el procedimiento provisto en [la Ley de Vehículos y Tránsito de Puerto Rico**]". (Énfasis suplido).

Al remitirnos a las disposiciones de la Ley 22, encontramos que el Secretario del DTOP está obligado a mantener un "**registro actualizado** de todos los vehículos de motor". (Énfasis suplido). Por su parte, el Reglamento aplicable a la inscripción de gravámenes sobre vehículos de motor tampoco señala en qué momento se considerará "inscrito" el gravamen. Lo que sí queda establecido es que para que se inscriba un gravamen únicamente se requiere que el acreedor, o su representante, presente un formulario de solicitud de inscripción del gravamen debidamente cumplimentado, la evidencia del pago de aranceles y copia del contrato de venta al por menor a plazos que evidencie el monto del precio de venta del vehículo de motor.

De las disposiciones de estas leyes complementarias, esto es, de la Ley de Transacciones Comerciales, *supra*, y la Ley de Vehículos y Tránsito, *supra*, surge entonces claramente que el gravamen quedará perfeccionado una vez el acreedor cumpla **con la presentación de <u>todos</u> los documentos requeridos.** Por esta razón, determinamos que la definición de "contrato inscrito" dispuesta en la Ley Uniforme de Confiscaciones de 2011, *supra*, debe entenderse como aquel contrato presentado adecuadamente ante el Registro de Vehículos de Motor, Arrastres y Semiarrastres del DTOP en perfecto cumplimiento con la ley. De esta forma, no bastará con la mera presentación de una Solicitud de gravamen, sino que será necesario la presentación de todos los documentos requeridos por ley para que se entienda inscrito el gravamen.

En el pasado hemos establecido que las leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver.[16] Esta interpretación es cónsona con el propósito de notificación que ha perseguido la notificación en los casos de confiscaciones, y como se ha realizado por décadas en nuestra jurisdicción. Esto es, salvaguardar los derechos constitucionales de una parte que tiene algún interés en

---

[16] <u>Pueblo v. Zayas Rodríguez</u>, 147 DPR 530, 537 (1999).

la propiedad confiscada y brindarle la oportunidad de argumentar y probar las defensas válidas que pueda tener.

En su moción de sentencia sumaria, Reliable acompañó los documentos que presentó ante el DTOP antes de que el Estado confiscara los vehículos. Así, demostró que había sido diligente al presentar todos los documentos para que se procesara su inscripción de gravamen. El Estado no refutó esta información. Según se desprende de los contratos presentados, Reliable era un acreedor con interés en el proceso de confiscación de los vehículos. Por tal razón, el Estado tenía el deber de notificarle de las confiscaciones. Por su parte, el Estado alegó que verificó en el sistema computarizado del DTOP y que en el mismo no se reflejaba que Reliable tuviera gravámenes inscritos a su favor.

Como explicamos, la Ley de Vehículos y Tránsito le impone la obligación al Secretario del DTOP de mantener un registro actualizado. Por otro lado, el Art. 13(c) de la Ley 119-2011, *supra*, hace referencia directa al proceso de inscripción de la Ley de Vehículos y Tránsito, *supra*, como parte de los requisitos de notificación al señalar que se **notificará** la confiscación "al acreedor condicional que a la fecha de la ocupación **tenga su contrato inscrito**".[17] (Énfasis suplido). **De manera, que el Art. 13(c) convierte el acto de inscripción en el DTOP en parte del proceso de notificación de la Ley 119-2011.** Es evidente entonces, que

---

[17] Art. 13 (c) de la Ley 119-2011.

el proceso de notificación según la Ley 119-2011, en realidad vislumbra dos fases. Primero, la fase del acreedor condicional o garantizado que presenta todos los documentos requeridos, y para el cual ya hemos determinado que tal condición cumple con el requisito para ser notificado. En segundo lugar, la fase de la inscripción *per se* y posterior notificación al acreedor condicional o garantizado, que corresponde al Estado a través del DTOP y el Departamento. Un acreedor condicional o garantizado no puede reclamar el no haber sido notificado si no ha cumplido con su parte del proceso. De igual manera, el incumplimiento por parte del Estado (DTOP no completa la inscripción, por lo que el Departamento no notifica) conlleva las consecuencias fatales que el legislador estableció en el Art. 13 de la Ley 119-2011 contra el Estado.

La falla en la notificación por parte del Estado en este caso no es sino el resultado del incumplimiento de una de sus dependencias, esto es, del DTOP. Pretender -como es la consecuencia del razonamiento de la PG- que la inacción del DTOP es una separada e independiente al Estado, es quitarle toda fuerza y seriedad al requisito constitucional que compele al propio Estado en estos casos de notificar a las partes con interés en la confiscación, requisito claramente reconocido bajo nuestro estado de

derecho.[18] Recordemos que quien confisca el vehículo en estos casos **es el Estado**, **el cual actúa en todo el proceso a través las agencias y o dependencias que lo representan (el DTOP, la Policía, la Fiscalía, la Junta de Confiscaciones, el P.G., etc)**. No puede entonces el Estado levantar como defensa a su favor el incumplimiento de cualquiera de estos organismos, máxime cuando en estos casos la propia ley aprobada por el **Estado** le impone expresamente el deber a uno de ellos de inscribir el gravamen correctamente presentado. Por eso, el argumento por parte del Departamento de que no estaba obligado a notificar a las recurridas sobre las confiscaciones porque al momento de efectuarse las incautaciones el Registro no reflejaba los gravámenes, resulta inoficioso. El asunto es que quien incumplió con el proceso de notificación fue el propio Estado.

### IV

Con relación a la Opinión Disidente, es menester hacer los siguientes planteamientos. Primeramente, no debe ser motivo de discusión el hecho de que el derecho a ser oído incluye el derecho de poder levantar **todas** las defensas válidas concedidas por el legislador en favor de una parte,[19] y **no sólo aquellas que le queden disponibles como resultado del incumplimiento de la otra parte**. Tal paradoja no tiene cabida en nuestro sistema de justicia,

---

[18] Véase B.B.V. v. E.L.A., 180 DPR 681, 687 (2011).

[19] General Accident Ins. Co. v. E.L.A., 137 DPR 466, 475 (1994).

máxime cuando la parte que incumple es el **Estado**. Recordemos que el caso de autos se trata de un proceso de confiscación, cuyas leyes reiteradamente hemos resuelto que se deben interpretar "de manera restrictiva y de forma compatible con la justicia y los dictados de la razón natural".[20]

Es claro que en este caso, y contrario a la posición de la Opinión Disidente, "una tardanza en el proceso oficinesco de inscripción"[21] no puede ser óbice para que las partes recurridas puedan levantar todas las defensas que el legislador les proveyó, incluyendo la desestimación de la confiscación por falta de notificación. Y es que, no se trata de la posibilidad de la "anulación automática de cientos de confiscaciones ejecutadas por el Estado" como presagia la Opinión Disidente.[22] Se trata de mucho más; a saber, salvaguardar el derecho estatutario y constitucional de los recurridos de presentar todas sus defensas y no permitir, como pretende la Opinión Disidente, la "anulación automática" de la que probablemente es la única defensa real que ostentan decenas de acreedores condicionales o garantizados.

Por último, la Opinión Disidente señala que "anular el proceso de confiscación por la dejadez de una agencia

---

[20] Coop. Seg. Mult. v. E.L.A., 180 DPR 655, 668 (2011); Centeno Rodríguez v. E.L.A., 170 DPR 907, 913 (2007); Del Toro Lugo v. E.L.A., 136 DPR 973, 985, 988 (1994).

[21] Opinión Disidente del Juez Asociado señor Martínez Torres, pág. 1.

[22] Íd.

pública separada de la que confisca es abrir la puerta para la ocurrencia de irregularidades".[23] Además, señala refiriéndose al resultado de nuestra determinación, que "[p]remia a quien haga pagos ilegales para impedir que se inscriban los gravámenes en el Registro del DTOP pues, de esa manera, provoca la anulación automática de confiscaciones realizadas correctamente".[24] Es interesante este argumento porque la propuesta de la Opinión Disidente es capaz de producir un mal aún peor.

Ciertamente, la corrupción pública es una aciaga realidad, para la cual se han desarrollado programas de educación con énfasis en los principios y valores que deben guiar a cada funcionario público, y los mecanismos de **fiscalización y penalización** para atajarla. En otras palabras, existen estrategias, recursos y la voluntad para educar, prevenir y castigar la conducta desviada de aquellos funcionarios públicos que lamentablemente actúan al margen de lo que inspira el servicio público, y aquellas personas privadas –naturales o jurídicas– que en ocasiones incitan y se aprovechan de este mal. Como vemos, la preocupación expresada en la Opinión Disidente es un mal que, aunque real, tiene formas de atenderse y mitigarse, y existe toda una política pública del Estado que lo atiende.

---

[23] Opinión Disidente del Juez Asociado señor Martínez Torres, pág. 10.

[24] Íd.

Ahora bien, ¿es el Estado capaz de utilizar estrategias en contra del ciudadano? Las garantías que conforman nuestra Carta de Derechos contestan claramente esa pregunta. Siendo así, cómo evitaríamos que el Estado no arrastre los pies en la inscripción en el Registro si, conforme a la propuesta de la Opinión Disidente, sale mejor no completando el proceso de inscripción que completándolo. Esto es, si el DTOP da rienda suelta a la "dejadez" que admite la Opinión Disidente, el resultado según su propuesta sería que los recurridos podrían llevar sus causas de acción, pero sin poder levantar la anulación de la confiscación que produciría algún error del Departamento en la notificación. Véase que, como señala la Opinión Disidente, ciertamente son múltiples los errores que puede cometer el Departamento de Justicia al notificar, que producen la anulación automática de la confiscación por ser la notificación **correcta** a las partes con interés un corolario del requisito jurisdiccional.[25] En otras palabras, la "dejadez" del DTOP terminaría siendo mucho más conveniente para el Estado que el error que podría cometer el Departamento en la notificación porque mientras lo primero no sería capaz de anular la confiscación, lo segundo sí. Nuevamente, qué motivación

---

[25] Véase Opinión Disidente del Juez Asociado señor Martínez Torres, pág. 11, en la que se cita con toda corrección a Colón Medina v. Srio. de Hacienda, 109 DPR 540 (1980); Vázquez Fontánez v. Tribunal Superior, 102 DPR 396 (1974); Srio. de Justicia v. Tribunal Superior, 96 DPR 116 (1968); Srio. de Justicia v. Tribunal Superior, 95 DPR 158 (1967).

tendría entonces el Estado para no arrastrar los pies en la inscripción y, peor aún, con qué mecanismo eficaz contaría el ciudadano para detectar tal acción y castigarla (¿presentar un recurso de Mandamus para cada inscripción que se ha tardado más de lo que parece razonable?).

**V**

Por último, somos conscientes que la pauta hasta aquí establecida con relación a la notificación no resolvería *per se* la dificultad en el proceso de notificación que presenta el Art. 13(c) de la Ley 219-2011. Y es que este problema persistía aún con el lenguaje de la anterior Ley Núm. 93 de 13 de julio de 1988. Lo cierto es que la Legislatura no parece haber considerado la consecuencia de que una agencia gubernamental dependa de otra para poder dar fiel cumplimiento al requisito jurisdiccional que establece este artículo. Sin embargo, nos negamos a aceptar que la aparente dejadez o ineficiencia en los organismos gubernamentales sea el tenor que defina los deberes de nuestro Gobierno. Además, el Gobierno, específicamente la Rama Ejecutiva, debe tener un claro interés en atajar aquellas fallas en el sistema que provoque la desestimación de casos como los de autos.

Por lo tanto, es altamente recomendable que el Departamento y el DTOP, a tono con la política pública de la Ley 119-2011, *supra*, que establece que el proceso de confiscación y su correspondiente impugnación se

conducirán de una manera rápida y expedita, establezcan un mecanismo para incluir en el Registro de Vehículos de Motor la información relacionada a cualquier solicitud de inscripción de gravamen mobiliario que esté pendiente de evaluación. Ello, pues como vimos la Ley de Vehículos y Tránsito, *supra*, requiere que se mantenga actualizada la información sobre cada vehículo, incluyendo "[c]ualquier acto de enajenación o gravamen", así como "[c]ualquier otra información necesaria para darle efecto a las disposiciones de est[a] [ley], o de cualesquiera otras leyes aplicables".[26] Dicho Registro actualizado y completo permitirá que, en circunstancias en que haya un gravamen pendiente de inscripción sobre el vehículo que se pretende confiscar, el Estado pueda ejecutar el procedimiento confiscatorio de conformidad con el derecho a un debido proceso de ley que garantiza la Constitución.

**VI**

Por las razones antes expresadas, confirmamos la Sentencia del Tribunal de Apelaciones y resolvemos que no se configuró el error señalado por la parte peticionaria.[27]

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[26] 9 LPRA sec. 5006.

[27] La decisión que hoy toma este Tribunal tendrá efecto retroactivo, excepto en aquellos casos en que medie una sentencia final y firme.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Reliable Financial
Services, Inc.

    Recurrido


     v.                        CC-2014-297       Certiorari

Departamento de Justicia de
Puerto Rico y Estado Libre
Asociado de Puerto Rico

    Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 29 de junio de 2016.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, confirmamos la Sentencia del Tribunal de Apelaciones y resolvemos que no se configuró el error señalado por la parte peticionaria.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió Opinión Disidente. La Juez Asociada señora Rodríguez Rodríguez no intervino. El Juez Asociado señor Feliberti Cintrón se inhibió.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reliable Financial Services, Inc.

    Recurrida

        v.

Departamento de Justicia de Puerto Rico, Estado Libre Asociado de Puerto Rico

    Peticionarios

CC-2014-0297

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 29 de junio de 2016.

A diferencia de la mayoría del Tribunal, opino que procede devolver este caso al Tribunal de Primera Instancia para que se ventile en sus méritos la demanda de impugnación que presentó Reliable Financial Services, Inc. (Reliable). Una tardanza en el proceso oficinesco de inscripción de gravámenes de vehículos en el Registro de vehículos de motor del Departamento de Transportación y Obras Públicas (DTOP), no puede dar lugar a la anulación automática de cientos de confiscaciones ejecutadas por el Estado. Esa no fue la voluntad legislativa. Por las razones que expongo a continuación, disiento respetuosamente del proceder mayoritario.

I.

El 3 de febrero de 2010, Reliable presentó una demanda de impugnación de confiscación contra el Departamento de Justicia y el Estado Libre Asociado. En esa demanda, reclamó ser acreedor condicional de varios vehículos de motor que habían sido confiscados de forma separada por el Estado.[28] Arguyó que esas confiscaciones eran nulas, pues nunca se le notificaron, a pesar de haber presentado oportunamente las solicitudes de inscripción de gravamen para cada vehículo en el Registro de Vehículos de Motor del DTOP (Registro). Por su parte, el ELA argumentó que no estaba obligado a notificarle a Reliable la confiscación de los vehículos de motor, pues al momento de la incautación, la institución no aparecía como acreedor condicional de esos vehículos en el Registro del DTOP.

Luego de varias incidencias procesales, el foro primario dictó sentencia sumaria a favor de Reliable. Así, señaló que el ELA incumplió con su deber de notificar a Reliable dentro del término de treinta días desde que se efectuó la confiscación. Por esa razón, declaró con lugar la demanda de impugnación y ordenó al ELA devolver los vehículos o, en su lugar, pagar un valor ascendente a $85,645.73, más los intereses a partir de la ocupación. Inconforme, el ELA presentó una moción de reconsideración

---

[28] Ford Fusion de 2006, tabilla GMJ-763; Nissan Pathfinder de 2001, tablilla ESL-782; Mazda B2300 de 2006, tablilla 815-127; Toyota Echo de 2005, tablilla FSH-567; Volkswagen Jetta de 2002, tablilla EOR-491 y Mitsubishi Lancer de 2008, tablilla HEJ-858.

que fue denegada. Insatisfecho, el ELA presentó un escrito de apelación.

El Tribunal de Apelaciones confirmó parcialmente el dictamen recurrido. Concluyó que el Estado, quien tiene en su poder los documentos para inscribir la solicitud de gravamen presentada por Reliable, no puede derivar un beneficio al incumplir con su función de inscribir los gravámenes en el Registro del DTOP, ya sea por ineptitud o arbitrariedad. Así, modificó la sentencia del foro primario y dispuso que, en ausencia de los vehículos de motor, corresponde pagar el valor de la tasación al momento de la ocupación. Todavía insatisfecho, el Estado presentó una moción de reconsideración que fue denegada.

Así las cosas, el Estado recurrió ante nos mediante una petición de certiorari que este Tribunal expidió.

II.

A. La confiscación es el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de un delito. Doble Seis Sport v. Depto. de Hacienda, 190 DPR 763, 784 (2014) (citando a Rodríguez Ramos v. E.L.A., 174 DPR 194, 202 (2008)). Debido a la naturaleza de este procedimiento, un estatuto de confiscación debe contener mecanismos para proteger los derechos constitucionales de las personas con interés legal sobre los bienes confiscados. En ese sentido, notificar el

hecho de la confiscación "a cada una de las personas con interés sobre la propiedad confiscada responde a la necesidad de salvaguardar sus derechos constitucionales y permitirle traer [sus] defensas o argumentos contra la confiscación". B.B.V. v. E.L.A., 180 DPR 681, 687 (2011); véase, además, *López Rivas v. Secretaria,* 162 DPR 345, 352 (2004); Santiago v. Supte. Policía de P.R., 151 DPR 511, 517-518 (2000). En otras palabras, se trata de brindarle a esa persona que ha sido privada de su interés propietario la oportunidad de ser oída. Esto, como corolario del debido proceso de ley en su vertiente procesal.

Aunque las confiscaciones que se presentan en el caso de autos fueron realizadas e impugnadas inicialmente al amparo de la Ley de Confiscaciones Núm. 93 de 13 de julio de 1988, 34 LPRA sec. 1723, et seq., esa legislación fue derogada por la Ley Uniforme de Confiscaciones de 2011 (Ley Núm. 119-2011), 34 LPRA sec. 1724, et seq. No obstante, la nueva ley contiene una cláusula de retroactividad para cobijar "aquellos procedimientos que se hayan iniciado en virtud de los procedimientos de confiscación bajo la Ley Núm. 93 de 13 de julio de 1988, según enmendada"[.] 34 LPRA sec. 1724w.

Mediante la Ley Núm. 119-2011, supra, el legislador buscó crear un proceso de confiscación expedito, ágil y uniforme. Primero, se propuso dar fin a los procedimientos dilatorios y evitar que los tribunales continúen congestionados por las demandas de impugnación de

confiscaciones. <u>Informe de las Comisiones de lo Jurídico y Ética y de Seguridad Pública sobre el P. del S. 897 de 14 de junio de 2010</u>, pág. 2. Segundo, el legislador quiso evitar que "el transcurso del tiempo deteriore las propiedades confiscadas en perjuicio de sus dueños". <u>Íd.</u> Así, la Ley Núm. 119-2011, dicta específicamente la forma y manera en que se notifica el hecho de la confiscación a las personas con interés sobre el bien incautado.

En lo pertinente a este caso, el texto del Art. 13 de la nueva ley, 34 LPRA sec. 1724j, requiere que se notifique la confiscación y la tasación de la propiedad confiscada:

> (1) a la persona que tuviere posesión física del bien al momento de la ocupación; (2) a aquéllas que, por las circunstancias, información y creencia, el Director Administrativo considere como dueños de dicho bien y (3) en los casos de vehículos de motor, al dueño según consta en el [Registro del DTOP] y al acreedor condicional que a la fecha de la ocupación, **tenga su contrato inscrito**. (Énfasis suplido).

Esa notificación de la confiscación se debe realizar por correo certificado dentro del término jurisdiccional de treinta días contados a partir de la incautación física del bien. <u>Íd.</u> Hemos señalado que el incumplimiento del Estado con un término para notificar una confiscación, anula todo el proceso confiscatorio. Véase, e.g., <u>Coop. Seguros Múltiples v. Srio. de Hacienda</u>, 118 DPR 115, 118 (1986). Nótese que, distinto a la Ley Núm. 119-2011, la derogada Ley de Confiscaciones de 1988, <u>supra</u>, disponía que se debía notificar el hecho de la confiscación a todo acreedor condicional que, "a la fecha de la ocupación[,] haya

presentado su contrato para ser archivado" en el Registro del DTOP. Art. 3, Ley de Confiscaciones de 1988, 34 LPRA sec. 1723a(2)(b)(derogado). A partir de la ley del 2011 se requiere que el contrato esté inscrito y no meramente presentado en el Registro del DTOP.

Luego de que la Ley Núm. 119-2011 entrara en vigor, la Asamblea Legislativa ha aprobado legislaciones para aclarar el alcance del estatuto confiscatorio y regular este poder del Estado. En lo que atañe al caso de autos, resalta la Ley Núm. 252-2012, que enmendó varios artículos de la Ley Núm. 119-2011, entre ellos, el Art. 13 sobre notificación a las personas con interés. No obstante, no se sustituyó el criterio que determina cuándo se debe notificar a un acreedor condicional sobre la confiscación de un vehículo. Esto es, se requiere que su contrato de venta condicional esté **inscrito** en el Registro del DTOP. Así, vemos que el cambio sobre el requisito de notificación entre la Ley de Confiscaciones de 1988 y la Ley Núm. 119-2011, no fue inadvertido.

Como vimos, el Art. 13 de la Ley Núm. 119-2011, supra, exige notificar la confiscación a toda persona que estuviere en posesión física del bien, a todo aquel que se crea dueño y a todo acreedor condicional que tenga su contrato de venta condicional **inscrito** en el Registro del DTOP. Estos datos son de fácil y rápida obtención por parte del Estado. Lo contrario obligaría al Estado a imaginar todas las posibles personas o acreedores con algún interés

propietario sobre el bien confiscado, lo que, sin duda, dilataría el proceso de confiscación en perjuicio del dueño y las demás personas con interés.

B. Por otro lado, para efectos de quién está legitimado para impugnar una confiscación, el Art. 15 de la Ley de Confiscaciones de 2011, 34 LPRA sec. 1724l, reconoce como dueño de la propiedad a "una persona que demuestre tener interés propietario en la propiedad incautada, incluyendo una persona que posea un gravamen sobre dicha propiedad a la fecha de ocupación de la propiedad incautada, o una cesión válida de tal interés propietario". Así, el estatuto reconoce explícitamente que toda persona que demuestre tener un interés propietario sobre la propiedad, a la fecha de la ocupación, tendrá legitimación para impugnarla.

Asimismo, además de reconocer legitimación, el Art. 15 del estatuto de confiscaciones, impuso unos términos de estricto cumplimiento para el manejo y disposición de la acción de impugnación de confiscación. En ese sentido, estableció que toda persona que haya sido notificada de la confiscación y que demuestre ser dueño, podrá presentar su demanda de impugnación dentro del término jurisdiccional de treinta días contados a partir de la notificación. Igualmente, fijó un plazo de quince días para emplazar al Estado. También, impuso un plazo para contestar la demanda de impugnación, así como un periodo de descubrimiento de prueba. Por último, vemos que a menos que se renuncie, la ley de confiscaciones también instituyó un término de seis

meses para que el foro primario disponga de la acción de impugnación de confiscación.[29] Doble Seis Sport v. Depto. de Hacienda, supra, pág. 786. En otras palabras, la política pública que implanta la Ley de Confiscaciones de 2011 es conducir el proceso de confiscación y su correspondiente impugnación en los tribunales de manera rápida y expedita.

III.

En el contexto de revisión de acciones gubernamentales, nuestro ordenamiento ha señalado constantemente que, ante una falta de notificación o notificación insuficiente, no pueden oponerse términos a quien no se le brindó una adecuada notificación. Molini Gronau v. Corp. P.R. Dif. Pub., 179 DPR 674, 687 (2010); véase, además, Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1014-1015 (2008); Colón Torres v. A.A.A., 143 DPR 119, 124 (1997). En esos escenarios, la impugnación solo estará sujeta a la doctrina de incuria. Molini Gronau v. Corp. P.R. Dif. Pub., supra, pág. 687.

En un caso donde el Estado incauta un bien, pero solo se ciñe a notificar a quien la ley de confiscaciones le requería notificar, es forzoso concluir que el proceso de confiscación se llevó correctamente. Sin embargo, pueden ocurrir situaciones en las que exista una persona que

---

[29] En torno a este término, vale la pena resaltar que la Ley Núm. 119-2011, permite extenderlo hasta un máximo de treinta días adicionales con el consentimiento escrito de todas las partes y solo por causa justificada. 34 LPRA sec. 1724l.

ostente un interés propietario sobre un bien confiscado, pero que la ley no requiera que se le notifique. Tal es el caso de acreedores condicionales que, a la fecha de la ocupación de un vehículo, aún tienen su contrato de venta condicional pendiente de inscripción en el Registro del DTOP, acreedores prendarios o acreedores que adquirieron su crédito mediante cesión. Contra esa persona que ha sido privada de su interés propietario sin una notificación, el Estado no puede oponer el término jurisdiccional para presentar una demanda de impugnación. En un escenario como ese, la parte afectada por la falta de notificación puede impugnar la confiscación y presentar todas las defensas que estime pertinentes a su reclamo, sin sujeción al término establecido por ley. Solo debe evitar incurrir en incuria.

En fin, en cuanto al requisito de notificación, el Estado conduce un proceso de confiscación correctamente cuando demuestra que notificó según lo dispuesto en el Art. 13 de la Ley Núm. 119-2011. Asimismo, contra esas personas que sí notificó, el Estado podrá oponer el término jurisdiccional de treinta días para impugnar la confiscación según dispuesto en el Art. 15 del estatuto ante nuestra consideración. No obstante, el Estado no podrá oponer el precitado término jurisdiccional contra aquella persona que, por no estar obligado por el Art. 13, no notificó. Aquella persona que, según el Art. 15 de la Ley Núm. 119-2011, demuestre tener un interés propietario sobre el bien, podrá impugnar la confiscación sin sujeción al

término dispuesto en ley, siempre y cuando no haya mediado incuria. Una conclusión contraria, lesionaría injustificadamente el interés propietario de esa persona o acreedor, sin cumplir con las exigencias mínimas el debido proceso de ley. B.B.V. v. E.L.A., supra, pág. 687.

Aunque en este caso el Estado ha demostrado ineficiencia en el proceso de inscripción de gravámenes de vehículos de motor en el Registro del DTOP, ello, por sí solo, no da margen para anular confiscaciones realizadas según el trámite dispuesto por ley. En ausencia de un problema constitucional, no nos corresponde juzgar la conveniencia o sabiduría de una pieza legislativa. Recordemos que nuestra función debe mantenerse dentro del ámbito judicial, sin incursiones indebidas en la esfera legislativa. Véanse: Meléndez v. Tribunal Superior, 90 DPR 656, 661-662 (1964); Caguas Bus Line v. Sierra, Comisionado, 73 DPR 743, 750 (1952); Parilla v. Loíza Sugar Co., 49 DPR 597, 600 (1936). Es decir, anular el proceso de confiscación por la dejadez de una agencia pública separada de la que confisca es abrir la puerta para la ocurrencia de irregularidades. Premia a quien haga pagos ilegales para impedir que se inscriban los gravámenes en el Registro del DTOP pues, de esa manera, provoca la anulación automática de confiscaciones realizadas correctamente. El mejor incentivo para que el Estado procure la inscripción eficiente de gravámenes en el DTOP es dejarlo desprovisto de la defensa jurisdiccional que provee el Art. 15 de la

Ley Núm. 119-2011. Así, el Estado no gana al evitar la inscripción de los gravámenes en el Registro del DTOP, pues la confiscación **siempre** se podrá impugnar, salvo que haya mediado incuria por la parte con interés. Por el contrario, anular automáticamente una confiscación por la tardanza del DTOP en la inscripción de gravámenes, no solo inutiliza una poderosa arma para combatir la criminalidad, sino que, además, añade una carga adicional al fisco, al tener que devolver el valor de la tasación al momento de la confiscación de cientos de vehículos, de los cuales ya ha dispuesto.

Por último, cuando hemos anulado confiscaciones por falta de notificación a una parte con interés, se destaca que el Estado estuvo en posición de llevar a cabo la notificación, pero, por la razón que sea, no la hizo. Véanse: Colón Medina v. Srio. de Hacienda, 109 DPR 540 (1980) (donde la notificación al dueño se realizó pasado el término provisto en la ley); Vázquez Fontánez v. Tribunal Superior, 102 DPR 396 (1974) (donde se envió notificación al dueño a una dirección equivocada y la notificación a la dirección correcta se realizó pasado el término que proveía la ley); Srio. de Justicia v. Tribunal Superior, 96 DPR 116 (1968) (donde no se notificó al dueño a la misma dirección que aparecía en el Registro del DTOP); Srio. de Justicia v. Tribunal Superior, 95 DPR 158 (1967) (donde las notificaciones se realizaron pasado el término provisto en la ley). En fin, cuando hemos resuelto anular el proceso de

confiscación, debe notarse que en cada caso el Estado tenía la posibilidad de saber a quién y a dónde notificar.

En un caso como el de autos, en donde no se ha inscrito un gravamen en el Registro del DTOP, el Departamento de Justicia no tiene forma de conocer la existencia del gravamen sobre el bien confiscado ni su tenedor para notificarlo de la confiscación. Nótese que la mayoría del Tribunal así lo reconoce, pues recomienda a la Rama Ejecutiva establecer un registro de gravámenes presentados o pendientes de perfeccionamiento en el DTOP, análogo al asiento de presentación que existe en el Registro de la Propiedad. Opinión mayoritaria, pág. 30.

Si bien la Opinión mayoritaria concluye correctamente que un gravamen de venta condicional sobre vehículos de motor se **perfecciona** cuando se presentan los documentos requeridos y se pagan los aranceles correspondientes en el Registro del DTOP, no me parece correcto utilizar como marco de referencia la Ley Núm. 208-1995, 19 LPRA sec. 401, et seq., mejor conocida como la Ley de Transacciones Comerciales (LTC), para definir el proceso de notificación de una confiscación que establece la Ley Núm. 119-2011, supra.

La LTC y la Ley Núm. 119-2011, tutelan dos intereses separados e independientes, es decir, en la LTC se establecen parámetros uniformes para el tráfico jurídico de transacciones económicas, y en el estatuto confiscatorio, se establece el proceso mediante el cual el Estado se

investirá de todo derecho propietario sobre un bien que se utilizó en un acto delictivo. Por esa razón, las consecuencias que trae el perfeccionamiento de un gravamen mobiliario en el contexto de la LTC son inaplicables en el contexto de la Ley Núm. 119-2011.[30] En esa línea, la Ley Núm. 119-2011 **modificó diáfanamente** el proceso de notificación de la confiscación y lo independizó del mecanismo de perfeccionamiento de un gravamen mobiliario, según establecido en la LTC. Así, a pesar de que en el pasado la Ley de Confiscaciones de 1988, supra, establecía un proceso de notificación de confiscación paralelo al del perfeccionamiento de un gravamen mobiliario sobre vehículos de motor, ese no es el caso con la Ley Núm. 119-2011. Ahora se requiere la inscripción y no la mera presentación de los documentos constitutivos del gravamen mobiliario para que, según la letra del estatuto confiscatorio vigente, el Estado venga obligado a notificar la confiscación al poseedor de un gravamen mobiliario sobre un vehículo de motor.

La solución que propongo no quita "la única defensa real" que tiene una persona con interés propietario sobre un vehículo confiscado, pues hasta que el contrato de venta

---

[30] Para una discusión sobre los efectos de un gravamen constituido y posteriormente perfeccionado, véanse, Thomas Quinn, Quinn's Uniform Commercial Code Commentary and Law Digest, 2da ed. rev., Minnesota, Ed. WEST, Vol. 7, sec. 9-201, págs. 352-354 (2011); R. Soltero Peralta, J.J. Oppenheimer Méndez, Derecho Mercantil, 7ma ed., Colombia, Ed. Publicaciones Puertorriqueñas, Inc., págs. 512-513 (1999).

condicional no se inscriba en el Registro del DTOP no hay derecho a ser notificado. Eso permite impugnar la confiscación por, precisamente, la falta de notificación. Opinión mayoritaria, págs. 26-27. En cambio, la avalancha de impugnaciones que motivará la decisión de hoy castigará significativamente las ya maltrechas finanzas gubernamentales. Recordemos que al anular innecesariamente cientos de confiscaciones, el Estado tendrá que devolver los bienes confiscados y en ausencia de estos, el valor de su tasación al momento de la ocupación. ¿Qué efectos tendrán las nuevas obligaciones, no presupuestadas, sobre la prestación de servicios esenciales a los ciudadanos? Solo el tiempo dirá.

Por estas razones, difiero del criterio adoptado en la Opinión del Tribunal, especialmente, porque existe una medida **menos onerosa** que permite balancear un interés legítimo del Estado frente a los derechos constitucionales de una persona afectada por la confiscación.

IV.

En circunstancias como las de este caso, no ha habido un verdadero incumplimiento por parte del Estado en el proceso de notificación de la confiscación, pues no estaba obligado a notificar la confiscación a determinados acreedores. Para salvaguardar los derechos del acreedor que no fue notificado, debe permitírsele argumentar la improcedencia de la confiscación y presentar todas las defensas válidas que entienda pertinentes. En otras

palabras, la solución que salvaguarda el interés propietario de esos acreedores es brindarle su día en corte. No obstante, se debe recalcar que no se podrá levantar como defensa que el Estado incumplió con el Art. 13 sobre notificación, supra, pues el Estado no está obligado a notificar, como solía estar bajo la derogada Ley de Confiscaciones de 1988, al acreedor condicional que hubiese "presentado" su contrato de venta en el DTOP, sino al que tuviese ese contrato "inscrito" en el Registro de esa agencia gubernamental. Es decir, como bien se señala en la Opinión del Tribunal, "el lenguaje utilizado por la Asamblea Legislativa [en la Ley Núm. 119-2011, supra] requiere que el Estado notifique la confiscación 'al acreedor condicional que a la fecha de la ocupación tenga su contrato inscrito' en el Registro de Vehículos del Departamento de Transportación y Obras Públicas". Opinión mayoritaria, pág. 19.

Opino que, como hemos hecho en el pasado ante una falta de notificación, lo que corresponde es, ausente una determinación de que se ha incurrido en incuria, permitir que la demanda de impugnación de confiscación que presentó Reliable se ventile en los méritos. Así, tendrá la oportunidad de atacar la confiscación con todas las defensas que entienda pertinentes. Por no notificar a Reliable, el Estado no podrá invocar como defensa el término jurisdiccional para impugnar la confiscación.

Por lo tanto, revocaría la sentencia recurrida y devolvería este caso al Tribunal de Primera Instancia, Sala de Carolina, para que se ventile la demanda de impugnación de confiscación en sus méritos.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado