ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **ORIENTAL BANK AND TRUST**<br><br>Apelado<br><br><br>v.<br><br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS**<br><br>Apelantes | KLAN202400519 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br><br>Civil Núm.: **PO2023CV02703**<br><br>Sobre: Impugnación de Confiscación |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 12 de julio de 2024.

Comparece ante nos el Gobierno de Puerto Rico (Gobierno o Apelante), mediante *Escrito de Apelación*, y nos solicita que revoquemos la *Sentencia* emitida el 28 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).[1] En virtud de esta *Sentencia*, el TPI declaró Ha Lugar a la *Solicitud de Sentencia Sumaria*[2] promovida por Oriental Bank and Trust (Oriental) y declaró la nulidad de la confiscación de un Mitsubishi, modelo Eclipse Cross, del año 2022 y con tablilla JTR-760 (Mitsubishi).

Por los fundamentos que discutiremos a continuación, confirmamos la *Sentencia*.

---

[1] Apéndice de *Escrito de Apelación*, Anejo I, págs. 1-17. Notificada y archivada en autos el 1 de marzo de 2024.
[2] *Íd.*, Anejo XI, págs. 118-132.

Número Identificador
SEN2024 _____

**I.**

El caso de marras dimanó el 5 de julio de 2023, luego de que la Policía de Puerto Rico ocupara un Mitsubishi registrado a nombre de Gabriel Josué García Cantellops. Según alegó la carta enviada el 9 de agosto de 2023 por el Gobierno a Oriental, dicha ocupación se debió a que el 5 de julio de 2023, el vehículo fue utilizado en violación al Artículo 404 de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2404.[3] Posteriormente, el 7 de agosto de 2023, el Gobierno emitió la *Orden de Confiscación.*[4]

Así las cosas, el 7 de septiembre de 2023 la Cooperativa de Seguros Múltiples y Oriental (en conjunto, Demandantes) presentaron una *Demanda* en contra del Gobierno para que se declare la nulidad o invalidez de la *Orden de Confiscación.*[5] En su *Demanda,* los Demandantes alegaron que:

> [L]a confiscación aquí impugnada fue realizada en contravención de las disposiciones de la Ley Uniforme de Confiscaciones de 2011[, Ley Núm. 119-2011, según enmendada, 34 LPRA sec. 1724 *et seq.* (Ley de Confiscaciones)], y la jurisprudencia aplicable. El Estado, a través de la Junta de Confiscaciones adscrita al Departamento de Justicia, **no cumplió con el requisito de notificación adecuada a todas las partes con interés en la unidad confiscada, específicamente, la notificación fue realizada treinta y cinco (35) días después de haber sido ocupada**, en incumplimiento con la Ley Uniforme de Confiscaciones de 2011, *supra*, lo que hace nula e ineficaz la confiscación por parte del Estado.[6]

El 10 de octubre de 2023, el Gobierno presentó su *Contestación a Demanda.*[7] Luego de varios trámites procesales, incluyendo el desistimiento de la *Demanda* por parte de la Cooperativa Seguros Múltiples, el 12 de enero de 2024, Oriental presentó una *Solicitud de Sentencia Sumaria* en la cual alegó que no

---

[3] *Íd.*, Anejo V, pág. 73.
[4] *Íd.*, Anejo XII, pág. 149.
[5] *Íd.*, Anejo V, págs. 63-98.
[6] *Íd.*, págs. 70-71. (Énfasis nuestro).
[7] *Íd.*, Anejo VIII, págs. 106-113.

existía controversia sobre el incumplimiento del Gobierno con el término dispuesto por la Ley de Confiscaciones para notificar la ocupación del Mitsubishi. En particular, señaló que el Mitsubishi fue ocupado el 5 de julio de 2023, la *Orden de Confiscación* emitida el 7 de agosto de 2023 y la notificación a Oriental enviada el 9 de agosto de 2023. Esto pese que el término jurisdiccional establecido por la Ley de Confiscaciones, *supra*, es de treinta (30) días siguientes a la fecha de ocupación del vehículo.

El 8 de febrero de 2024, el Gobierno presentó una *Moción en Cumplimiento de Orden y Oposición a Sentencia Sumaria*.[8] Mediante dicha comparecencia, el Gobierno alegó que existían hecho controvertidos que impedían la resolución de la controversia mediante el mecanismo de sentencia sumaria. En primer lugar, señaló que aunque el Mitsubishi fue ocupado el 5 de julio de 2023, este no fue confiscado hasta el 7 de agosto de 2023. Alegó que la Ley de Confiscaciones dispone de un término de treinta (30) días dentro del cual el Gobierno puede ocupar un vehículo para propósitos investigativos antes de ordenar su confiscación. Además, alegó que en el presente caso, por estar envuelta una acción de índole penal, el Gobierno tenía como término excepcional noventa (90) días para completar la investigación y expedir la orden de confiscación.[9] Por lo tanto, arguyó que cumplió con la Ley de Confiscaciones.

El 28 de febrero de 2024, el TPI emitió la *Sentencia* recurrida.[10] En la misma, declaró Ha Lugar a la *Solicitud de Sentencia Sumaria* y, por consiguiente, Ha Lugar a la *Demanda*. En su *Sentencia*, el TPI hizo las siguientes determinaciones de hechos materiales que no están en controversia:

> 1. El 5 de julio de 2023 el Estado Libre Asociado de Puerto Rico, a través de la Policía de Puerto Rico, ocupó el vehículo de motor marca Mitsubishi, modelo

---

[8] *Íd.*, Anejo XII, págs. 133-170.
[9] *Íd.*, pág. 136.
[10] *Íd.*, Anejo I, págs. 1-17.

Eclipse Cross, tablilla JTR-760 del año 2022, el cual aparece registrado a nombre del Sr. Gabriel Josué García Cantellops.

2. El vehículo esta registrado a nombre del Sr. Gabriel Josué García Cantellops con un gravamen registral a favor de Oriental Bank and Trust, toda vez que el contrato de venta condicional a plazos fue debidamente inscrito.

3. Durante la Vista de Legitimación Activa celebrada el 13 de noviembre de 2023 se le reconoció al demandante Oriental Bank and Trust legitimación activa en el presente caso.

4. En el Inventario de Vehículo con fecha del 5 de julio de 2023 se marcaron los encasillados correspondientes a que el vehículo fue *ocupado para investigación e involucrado en la comisión de un delito.* Se consignó que se ocupó evidencia dentro del vehículo consistente en: *"[M]arihuana y 3 celulares color negro Iphone y desconocidos".*

5. La prueba de campo fue realizada a la evidencia ocupada, el mismo 5 de julio de 2023 la misma arrojó un resultado positivo a marihuana.

6. Del Informe de Incidente se desprende que, al día siguiente de la ocupación, 6 de julio de 2023, se les radicaron cargos a dos personas detenidas por los hechos relacionados con la ocupación del vehículo imputándoles infracción al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, determinándose causa para arresto en la etapa de Regla 6 de Procedimiento Criminal.

7. La Orden de Confiscación se emitió el 7 de agosto de 2023. De esta se desprende que se ordenó la confiscación *"por considerarse que es producto, ha sido utilizado o está relacionado con la comisión de los hechos delictivos que se hacen constar en el epígrafe de esta Orden".* El valor de tasación del vehículo confiscado adjudicado por la Junta de Confiscaciones es de $23,000.00. No surge imputación alguna de que le vehículo fue incautado por motivos investigativos.

8. La notificación de la confiscación fue depositada en el correo el 9 de agosto de 2023, siendo recibida por Oriental Bank and Trust el 11 de agosto de 2023.

9. En la notificación de la confiscación se alega que la ocupación obedeció a que el 5 de julio de 2023 el vehículo fue utilizado en violación al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico en Ponce, Puerto Rico.

10. De la notificación de la confiscación se desprende que la *Certificación de Inspección de Vehículos de Motor y Equipo Pesado* preparado por el Negociado de la Policía de Puerto Rico fue expedida el 21 de julio de 2023. No surge imputación de violaciones relacionadas con la Ley Núm. 8 de 5 de agosto de 1987, Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3201 et seq.[11]

---

[11] *Íd.,* págs. 7-8.

A base de estos hechos, el TPI resolvió mediante la vía sumaria que el Gobierno se había excedido del término jurisdiccional de treinta (30) días para notificarle a Oriental de la confiscación del Mitsubishi. En cuanto al argumento del Gobierno de que se podía acoger al término excepcional de noventa (90) días para notificar la ocupación, el TPI resolvió que:

> Este Tribunal concluye, que de la única forma en que el Estado puede aprovecharse de este plazo adicional es estableciendo que la propiedad fue incautada y retenida con el propósito de asistir en alguna investigación. En este caso el Estado no proveyó documento alguno que nos coloque en posición de que, en efecto, se llevó a cabo alguna investigación relacionada con el vehículo.[12]

El 18 de marzo de 2024, el Gobierno presentó oportunamente una *Moción de Reconsideración al Amparo de la Regla 47 de Procedimiento Civil*.[13] Tras una moción en oposición presentada por Oriental,[14] el 27 de marzo de 2024, el TPI emitió una *Resolución* en la cual se sostuvo en su determinación.[15]

Inconforme, el 28 de mayo de 2024, el Gobierno presentó el *Escrito de Apelación* ante nuestra consideración. Señaló como único señalamiento de error que:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DARLE PASO A LA MOCIÓN DISPOSITIVA PRESENTADA POR LA PARTE APELADA CUANDO LA PRUEBA DOCUMENTAL DEMOSTRÓ LA NECESIDAD DE RETENER EL VEHÍCULO DE MOTOR PARA UNA INVESTIGACIÓN CRIMINAL PARALELA DE CONFORMIDAD CON EL ARTÍCULO 13 DE LA LEY DE CONFISCACIONES DE 2011 Y AL NO TOMAR EN CUENTA QUE, COMO MÍNIMO, EXISTE CONTROVERSIA DE HECHOS SOBRE SI EL VEHÍCULO FUE OCUPADO PARA FINES INVESTIGATIVOS EN CUMPLIMIENTO CON ESTE ARTÍCULO.**

---

[12] *Íd.*, pág. 16.
[13] *Íd.*, Anejo II, págs. 18-35.
[14] *Íd.*, Anejo III, págs. 36-60.
[15] *Íd.*, Anejo IV, págs. 61-62.

El 27 de junio de 2024, Oriental presentó su *Alegato en Oposición a Apelación*. Con la comparecencia de las partes, procedemos a discutir el derecho aplicable.

**II.**

**A.**

La Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite que cualquier parte solicite una moción de sentencia sumaria. "La sentencia sumaria constituye un mecanismo procesal mediante el que se le confiere discreción al tribunal para dictar sentencia sobre la totalidad de una reclamación, o sobre cualquier controversia comprendida en esta, sin la necesidad de celebrar una vista evidenciaria". J. A. Echevarría Vargas, *procedimiento civil puertorriqueño*, 1ra ed. rev., San Juan, 2012, pág. 218. "El principio rector de una sentencia sumaria debe ser el sabio discernimiento pues de ser mal utilizada se podría estar despojando a un litigante de su día en corte". *Íd.*

Para que proceda la sentencia sumaria, no pueden existir controversias en cuanto a los hechos reales y sustanciales, por lo que lo único que debe hacer un tribunal es aplicar el derecho. En ocasión, las controversias de hechos se confunden con controversias de derecho. Es el deber de los tribunales diferenciar entre ambas. *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 226 (2015). El Tribunal Supremo ha aclarado que "las determinaciones de hecho establecen qué fue lo que pasó, mientras que en las conclusiones de derecho se determina el significado jurídico de esos hechos conforme a determinada norma legal". *Íd.* El hecho de que exista un hecho en controversia no significa que una sentencia sumaria es improcedente. "Esos hechos, a su vez, deben ser interpretados por el juez para determinar si son esenciales y pertinentes [...]". *Íd.*, pág. 227. Un hecho real y sustancial es aquel "que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo

aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

Cualquier duda sobre la existencia de controversia sobre hechos reales y sustanciales debe resolverse en contra de la parte promovente. *Vera v. Dr. Bravo*, 161 DPR 308, 332-333 (2004). De existir controversia sobre hechos reales y sustanciales, "no podría dictarse [sentencia] y habría que celebrar un juicio para resolver la controversia en torno a los hechos". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 6ta ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 316.

Al revisar sentencias sumarias, los tribunales apelativos deben utilizar los mismos criterios que los tribunales de instancia. *Vera v. Dr. Bravo, supra*, pág. 334. Sin embargo, los foros apelativos están limitados de dos maneras:

> [P]rimero, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibit, deposiciones o affidávit que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. Segundo, el tribunal apelativo **sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia**. *Íd.*, pág. 335.

(Énfasis nuestro).

En consecuencia, cuando el foro apelativo determina que existen controversias de hecho reales y sustanciales, lo que procede es la devolución del caso al tribunal de instancia para que se celebre un juicio para adjudicar esos hechos en controversia.

**B.**

El derecho a la propiedad privada es un derecho de alto interés público y constituye fundamento de nuestro sistema de gobierno. *Proprietors of Charles River Bridge v. Proprietors of Warren*

*Bridge,* 3 US 420 (1837); *Rivera García v. Registradora,* 189 DPR 628 (2013). Tanto la Constitución de los Estados Unidos como la Constitución de Puerto Rico contienen cláusulas que protegen y consagran el derecho al disfrute de la propiedad. Privar a una persona de su propiedad requiere estricto cumplimiento con las garantías del debido proceso de ley. Cuando el Gobierno priva a un individuo de su propiedad, este viene obligado a darle la justa compensación.

La Quinta Enmienda de la Constitución de los Estados Unidos, Emda. V, Const. EE. UU., LPRA Tomo 1, dispone que ninguna persona será privada de "sus bienes sin el debido procedimiento legal; ni se podrá expropiar una propiedad privada para destinarla a uso público sin la justa compensación". La Decimocuarta Enmienda permite que se ejerza este derecho ante acciones de los estados, disponiendo que "ningún estado privará a persona alguna de su vida, su libertad o su propiedad sin el debido procedimiento legal". *Íd.*, Emda. XIV.

Nuestra Constitución es más abarcadora por lo que el derecho a la propiedad goza de mayores protecciones. La Sección 7, Artículo II de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1, dispone que:

> Se reconoce como **derecho fundamental del ser humano** el derecho a la vida, a la libertad y **al disfrute de la propiedad**. No existirá la pena de muerte. **Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley**, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. **Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo**.

(Énfasis nuestro).

La Sección 9 dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley".

*Íd.*, Sec. 9. Aunque haya mucho en común entre nuestra Constitución y la de los Estados Unidos, es imprescindible destacar que la nuestra consagra el derecho al disfrute de la propiedad como uno **fundamental**.

El derecho al disfrute de la propiedad no es absoluto. Tal derecho está "**sujeto a su función social y a los amplios poderes de razón de estado de la Asamblea Legislativa**, siempre y cuando el ejercicio de dichos poderes legislativos fuese **razonable**". Jorge M. Farinacci Fernós, *La Carta de Derechos*, San Juan, Editorial de la Universidad Interamericana de Puerto Rico, 2021, pág. 124. (Énfasis en la original).

Mediante la Ley de Confiscaciones, *supra*, la Asamblea Legislativa ha autorizado al Estado a "ocupar e investirse para sí todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de ciertos delitos". *Reliable v. Depto. Justicia y ELA*, 195 DPR 917, 924 (2016). A través de la confiscación, el Estado adquiere "el título de aquellos bienes que se hayan utilizado para fines ilícitos". *Reliable Financial v. ELA*, *supra*, pág. 296. Cabe señalar que los procedimientos de confiscación no dependen del resultado de una acción penal; estos "podrán llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado". Ley de Confiscaciones, *supra*, Art. 8.

Como trata de la privación de la propiedad privada de una persona, el proceso de confiscación requiere estricto cumplimiento con el debido proceso de ley. *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796, 813 (2022). A estos fines, el Estado tiene la obligación de notificar a las personas señaladas en la ley, entre ellas, al dueño de un vehículo de motor según conste en el Registro de Vehículos del Departamento de Transportación y Obras Públicas. Ley de Confiscaciones, *supra*, Art. 13.

El término para notificar varía dependiendo de las circunstancias de la confiscación. La norma general es que el Estado tiene treinta (30) días desde la ocupación de la propiedad para notificar la confiscación. *Íd.* Sin embargo, cuando se retiene cualquier propiedad para una investigación relacionada con cualquier acción penal, "el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. **Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación**". *Íd.* (Énfasis nuestro).

En *Reliable Financial v. ELA*, *supra*, nuestro Tribunal Supremo tuvo la oportunidad de interpretar el Artículo 13 de la Ley de Confiscaciones, particularmente la excepción de investigación en proceso. Determinó que para que el Estado pueda invocar la excepción al término de notificación de treinta (30) días, debe cumplir con dos requisitos. Primero que, "contemporáneamente o cercano a la incautación exista o se inicie algún tipo de investigación de naturaleza civil, penal o administrativa". *Íd.*, pág. 302. Segundo, "que esa investigación esté de alguna manera vinculada a la razón para ocupar la propiedad incautada". *Íd.*

Por las implicaciones constitucionales que conllevan las confiscaciones, los tribunales debemos interpretar las disposiciones atinentes a las confiscaciones de manera restrictiva. *Íd.*, pág. 303. El Estado "únicamente podrá aprovecharse del plazo adicional si cumple con cada una de las exigencias enumeradas en el último postulado del Art. 13 [...]". *Íd.* Por lo tanto, el Estado debe hacer constar su cumplimiento con estos requisitos lo más pronto posible. *Íd.*, pág. 305. Idealmente, esto se cumpliría en la orden de confiscación. *Íd.* Si el Estado cumple con la constatación, le corresponde a la parte que impugna la deficiencia en la notificación probar que esta se hizo tardíamente. *Íd.*, pág. 306.

¿Esto conlleva la nulidad automática de la confiscación? Si la parte que impugna la notificación logra demostrar que el Estado incumplió con los requisitos del Artículo 13 de la Ley de Confiscaciones, *supra*, el peso de la prueba se invierte.

> Ahora bien, en la ausencia de las comunicaciones mencionadas, **una vez impugnada una notificación por tardía**, si el Estado interesa valerse del periodo de tiempo adicional consignado en la última modalidad del Art. 13 de la Ley Núm. 119-2011 por alegada ocupación para fines investigativos, **le corresponde el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad retenida y la investigación correspondiente**.
>
> *Reliable Financial v. ELA, supra*, pág. 306. (cita omitida) (Énfasis nuestro).

En resumen, si el Estado no hace constar los fines investigativos de la ocupación, entonces debe demostrarle al tribunal, **en la acción de impugnación de la confiscación**, mediante prueba fehaciente, la conexión entre la ocupación y la investigación. ¿Realmente existe una investigación vinculada a la razón para ocupar la propiedad incautada? Esto es una controversia sobre hechos reales y sustanciales. Sin claridad sobre este asunto, no se puede atender la controversia en derecho.

### III.

Como hemos discutido, en los procedimientos de impugnación de una confiscación y para determinar si aplica o no el término excepcional de noventa (90) días para la notificación, es menester que el Tribunal determine si en realidad existía o no una investigación que justifique la excepción. Recientemente, este Tribunal tuvo ante sí una controversia similar a la que surge en el caso de autos. En *Popular Auto LLC. V. Estado Libre Asociado y otros*, KLAN202301138, Sentencia de 20 de febrero de 2024,[16] este Tribunal revocó al TPI por resolver, mediante la vía sumaria, que

---

[16] Panel integrado por su presidente el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo (jueza ponente).

procedía la devolución de un vehículo confiscado. Al igual que la controversia en el caso de marras, ahí, los demandantes impugnaron la notificación tardía de la confiscación por parte del Gobierno. Ante los hechos particulares de aquel caso, este Tribunal concluyó que existía una controversia real sobre si había una investigación que activara el término excepcional de noventa (90) días para notificar una confiscación, conforme el Artículo 13 de la Ley de Confiscaciones, *supra.* Por lo tanto, no procedía la resolución del caso mediante la vía sumaria.

No obstante lo allí decidido, dicha conclusión no debe aplicarse automáticamente a todo caso de confiscación. La mera alegación de que existe una investigación no es suficiente para crear controversia sobre la existencia de una investigación que justifique la notificación excepcional. Esta determinación debe tomarse caso a caso, luego de evaluar los hechos particulares de cada uno. En aquella ocasión, había una controversia real sobre hechos materiales, en el caso de autos, no lo hay. Veamos.

En su *Contestación a la Demanda*, el Gobierno no proveyó información sobre la existencia de una investigación indispensable a la acción penal incoada en contra de los sujetos arrestados el 5 de julio de 2023. Resaltamos que la *Notificación de la Confiscación* enviada el 9 de agosto de 2023 tampoco hace referencia a una investigación, solo señalando que en efecto, se confiscó el Mitsubishi. En su *Moción de Reconsideración*, el Gobierno por primera vez señala las circunstancias de la intervención que ocurrió el 5 de julio de 2023. Alegó que:

> El caso de marras trata de una investigación confidencial que, luego de realizarse una vigilancia en el Sector Los Caobos de Ponce, fueron transferidos motivos fundados y se arrestaron a los dos ocupantes del vehículo de motor marca Mitsubishi, modelo Eclipse Cross del año 2022, color blanco y con tablilla JTR-760. Según surge del Informe de incidente luego que fue realizada una transacción de sustancias controladas las personas con las cuales se efectuó dicha transacción

se marcharon en el vehículo antes mencionado y al ser arrestados les fue ocupado lo siguiente: envase cilíndrico con tapa color roja conteniendo picadura de aparente marihuana. Luego de realizarse la prueba de campo en la División de Drogas a la evidencia ocupada se obtuvo un resultado de positivo a marihuana.[17]

De esta alegación, surge que el arresto se dio luego de recibir unas confidencias e investigación previa. La Policía llevaba tiempo vigilando el área y tenía conocimiento de que iba a ocurrir un delito en aquel momento. Sobre la confiscación del Mitsubishi, alegó que:

En la investigación realizada surgió que el vehículo de motor fue utilizado en violación a una ley especial de Puerto Rico la cual contiene estatuto confiscatorio, por lo tanto, el vehículo era una propiedad ocupada para investigación y no confiscada hasta que se complete la investigación y se firma por el Ministerio Público la Orden de Confiscación. Precisamente es dicha Orden de Confiscación firmada el 7 de agosto de 2023 es la que materializó el acto confiscatorio.[18]

En ningún momento el Gobierno alega o hace referencia a la importancia del Mitsubishi para la investigación fuera de que fue el vehículo utilizado el 5 de julio de 2023. Para que una alegada investigación de paso al término excepcional para la notificación de una confiscación, "**no es suficiente aludir simplemente a una supuesta investigación en términos vagos y generalizados. El estatuto exige establecer, tanto la naturaleza de la investigación, como la necesidad de retener la propiedad para fines asociados a esa investigación**". *Reliable Financial v. ELA*, *supra*, pág. 303. (Énfasis nuestro). En el caso de autos, el Gobierno no cumplió con esta exigencia.

## IV.

Por los fundamentos discutidos, confirmamos la *Sentencia* del TPI.

---

[17] Apéndice, *supra*, Anejo II, pág. 21.
[18] *Íd.*, págs. 21-22.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones