TRIBUNAL DE APELACIONES
**PANEL XII**

| UNIVERSAL INSURANCE COMPANY Y OTROS<br><br>Apelante<br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Apelada | KLAN202400866 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2023CV00903 (208)<br><br>Sobre: IMPUGNACIÓN DE CONFISCACIONES (LEY NÚM. 119-2011) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

Los apelantes, Toyota Credit de Puerto Rico y Universal Insurance Company, solicitan que revoquemos la Sentencia en la que el Tribunal de Primera Instancia desestimó la demanda de epígrafe por falta de legitimación activa.

El Estado Libre Asociado de Puerto Rico, en adelante el apelado o el Estado, presentó su oposición al recurso.

Con la comparecencia de ambas partes, procedemos a resolver.

**I.**

Los hechos precedentes a la controversia que nos ocupa son los siguientes.

La Sra. Isabel García Burgos compró un vehículo Toyota Corolla XSE (2019) con tablilla JKT-505. Dicho vehículo fue financiado por Toyota Credit de Puerto Rico, en adelante Toyota Credit, en contrato de venta al por menor a plazos. Mientras que Universal Insurance Company, en adelante Universal, cubría el

riesgo de confiscación que incluía a Toyota como *Loss Payee*. El 21 de noviembre de 2021, el Estado confiscó el automóvil por alegadamente haber sido utilizado en violación de la ley. El apelado notificó a Toyota Credit dicha ocupación mediante carta con fecha del 22 de mayo de 2023.[1]

Posteriormente, el 22 de junio de 2023, Universal y Toyota Credit presentaron ante el Tribunal de Primera Instancia, Sala Superior de Humacao, en adelante TPI, una *Demanda*, en la que impugnaron la confiscación del automóvil.[2] En lo pertinente, los apelantes alegaron que Toyota Credit tenía un gravamen anotado a su favor en el Registro de Automóviles del Departamento de Transportación y Obras Públicas (DTOP) y que Universal estaba interesada en el automóvil porque expidió una póliza de seguro contra el riesgo de que fuese confiscado, a favor de la entidad bancaria. Toyota reclamó ser la dueña del contrato de venta condicional al momento de la confiscación. Finalmente, argumentaron que la confiscación del automóvil era nula por haber sido notificada vencido el término dispuesto para ello en la Ley Uniforme de Confiscaciones de Puerto Rico. Además, señalaron que la confiscación era ilegal, nula, injustificada e improcedente, ya que el vehículo nunca había sido utilizado en violación a ley alguna.

Por su parte, el 26 de julio de 2021, el Estado presentó su *Contestación a Demanda*.[3] El apelado alegó, entre otras cosas, que la apelante tenía el peso de probar que poseían dominio y control sobre el bien confiscado antes de los hechos que motivaron la confiscación. En cuanto a la notificación de confiscación, aceptó que la misma fue tardía.[4] Por consiguiente, el 27 de julio de 2023, el TPI emitió una *Orden* en la que señaló una vista de legitimación activa

---

[1] Apéndice 5 del *Recurso de Revisión*, págs. 35-36.
[2] Apéndice 5 del *Recurso de Revisión*, págs. 32-34.
[3] Apéndice 6 del *Recurso de Revisión*, págs. 38-45.
[4] Apéndice 6 del *Recurso de Revisión*, pág. 39, inciso 5.

para el 5 de septiembre de 2023. El 28 de agosto de 2023, los apelantes presentaron una *Moción Informativa sobre Legitimación, Solicitando Orden y Solicitando Sentencia Conforme a las Alegaciones* para acreditar la legitimación activa.[5] En dicha moción se presentó como prueba copia de los siguientes documentos: Certificado de Título con un gravamen anotado a favor de Toyota Credit con fecha de 9 de junio de 2022; la *Declaración de Financiamiento y Solicitud de Anotación de Gravamen Mobiliario Sobre Vehículos de Motor o Arrastres* (Formulario DTOP-770) con fecha de 29 de septiembre de 2021 —**no estaba ponchado o firmado por el Oficial del DTOP**—; y Contrato de Venta con fecha igual a la de dicho formulario.[6]

En la vista de legitimación activa, Universal desistió de la *Demanda*, ya que reconoció que no se le cedió ningún interés propietario sobre el automóvil.[7] Por su parte, el Estado razonó que, de los documentos presentados por Toyota en apoyo de su reclamación, el gravamen registrado en el automóvil aparecía con fecha del 9 de junio de 2022, **posterior a la confiscación** —21 de noviembre de 2021—. Resaltó, además, que en el Formulario DTOP-770, donde un funcionario público firma y da fe de su presentación, estaba en blanco.

Así las cosas, el 8 de septiembre de 2023, el foro primario notificó la *Minuta* de la vista de legitimación activa, en la que le concedió 10 días a Toyota Credit para mostrar causa por la cual no se debía desestimar su *Demanda*.[8] Transcurrido el término concedido sin que los apelantes mostraran causa, el TPI dictó *Sentencia* en la que desestimó la *Demanda*.[9] En su dictamen, el TPI concluyó que la prueba presentada por Toyota Credit no demostraba

---

[5] Apéndice 8 del *Recurso de Revisión*, págs. 47-48.
[6] *Íd.*, págs. 47-55.
[7] Entrada núm. 8 del Sistema Unificado de Manejo y Administración de Casos conocido como SUMAC.
[8] *Íd.*
[9] Apéndice 2 del *Recurso de Revisión*, págs. 2-4.

que poseía un gravamen inscrito antes de la confiscación del automóvil, por lo que no quedaba más alternativa que desestimar la reclamación.

Inconformes, los apelantes, el 29 de septiembre de 2023 presentaron *Moción de Reconsideración y en Cumplimiento de Orden*.[10] En ella, anejaron la Carta de Presentación ponchada el 22 de noviembre de 2021. Como no se había resuelto la *Reconsideración* presentada, los apelantes presentaron *Moción Reiterando Reconsideración*.[11] Finalmente, el TPI emitió *Resolución* en la cual denegó la reconsideración presentada.

Inconforme, Toyota y Universal acudieron ante este Tribunal mediante recurso de apelación, en el que alegan que:

> **Erró el Tribunal de Primera Instancia, Sala de Humacao, al determinar que Toyota Credit de Puerto Rico no posee legitimación activa para presentar la demanda de autos.**

**II.**

**A.**

En nuestro ordenamiento jurídico, el proceso de confiscación está regulado por la *Ley Uniforme de Confiscaciones de 2011,* en adelante Ley de Confiscaciones. Ley Núm. 119-2011 (34 LPRA sec. 1724 *et seq.*). La confiscación es el acto de ocupación que hace el Estado de todo derecho propietario sobre cualquier bien utilizado en la comisión de ciertos delitos. Por tratarse de una privación de propiedad, debe satisfacer las garantías mínimas del debido proceso de ley, pues representa una excepción al mandato constitucional que prohíbe al Estado tomar propiedad privada para fines públicos sin que exista justa compensación. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 463 (2023); *Coop. Seg. Múlt. v. E.L.A.*, 180 DPR 655, 662–663 (2011). Los tribunales estamos obligados a interpretar

---

[10] Apéndice 3 del *Recurso de Revisión,* págs. 5-18.
[11] Entrada núm. 13 de SUMAC.

las disposiciones atinentes a las confiscaciones de manera restrictiva, debido a sus implicaciones constitucionales. *Reliable Financial v. ELA,* 197 DPR 289, 303 (2017).

Los términos establecidos en el Art. 13 de la Ley de Confiscaciones para que el Estado notifique esa determinación al dueño o la parte con interés en la propiedad confiscada se activan a partir de la orden de confiscación. 34 LPRA sec. 1724j.

La norma general es que toda confiscación se notifique por correo certificado, dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación. *Íd.* Ahora bien, existen dos excepciones que justifican la notificación más allá del término de 30 días. Estas son:

a) en el caso de vehículos de motor que sean ocupados en virtud de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como "Ley para la Protección de la Propiedad Vehicular" (9 LPRA §§ 3201 et seq.), la notificación se hará dentro de los treinta (30) días siguientes a partir del término de treinta (30) días dispuestos para que los oficiales del orden público lleven a cabo una investigación sobre el bien ocupado. Un vehículo ocupado al amparo de la "Ley para la Protección de la Propiedad Vehicular", no será confiscado a favor del Gobierno de Puerto Rico hasta tanto se culmine el procedimiento dispuesto en dicha Ley. El mismo se mantendrá bajo la custodia de la Policía hasta que se culmine la investigación correspondiente.

b) En aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal, civil, administrativa o cuando el bien es indispensable para la investigación o como evidencia en el caso, el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación. *Íd.*

Conforme a lo anterior, el Art. 13, *supra*, establece quiénes deben ser notificados sobre la confiscación. Este dispone que el

Director Administrativo de la Junta de Confiscaciones está obligado a notificar a:

>       (a) A la persona que tuviere la posesión física del bien al momento de la ocupación.

>       (b) A aquéllas que por las circunstancias, información y creencia, el Director Administrativo considere como dueños de dicho bien.

>       (c) **En los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la fecha de la ocupación tenga su <u>contrato inscrito.</u>**

>       [...] 34 LPRA sec. 1724j. (Énfasis nuestro)

Cuando la Ley de Confiscaciones hace referencia al derecho del dueño según el Registro de Vehículos de DTOP y el acreedor condicional, expresamente dispone que estos han de tener su "contrato inscrito." El Tribunal Supremo de Puerto Rico tuvo la oportunidad de definir cuándo se encuentra un "contrato inscrito" para efectos de reconocer al dueño o acreedor. El más Alto Foro local evaluó si los legisladores tuvieron en mente, la mera presentación de los documentos o si aludían a la culminación del proceso de inscripción por parte del Estado, o sea, cuando los documentos presentados fueron finalmente valorados. Concluyeron que "contrato inscrito" debía entenderse como aquel contrato presentado adecuadamente ante el Registro de Vehículos de Motor, Arrastres y Semiarrastres del DTOP. Es decir, el gravamen quedaría perfeccionado una vez el acreedor cumpla con la presentación de todos los documentos requeridos. De esa manera, el contrato quedará inscrito. *Reliable v. Depto. Justicia y ELA*, 195 DPR 917, 934 (2016).

De manera que, no todas las personas con algún interés en la propiedad confiscada tendrán legitimación activa para presentar una demanda de impugnación de confiscación. No nos queda duda que, mediante la Ley de Confiscaciones el legislador acotó

claramente que como en cualquier otra reclamación civil, todo demandante tenía que poseer legitimación activa para incoar su reclamo. Véase, Exposición de Motivos de la Ley de Confiscaciones. La facultad para impugnar la confiscación está condicionada a que la persona notificada logre demostrar que es dueño de la propiedad. Art. 15 de la Ley de Confiscaciones, 34 LPRA sec. 1724l; *CSMPR et al. v. ELA,* 196 DPR 639, 646 (2016); *MAPFRE v. ELA,* 188 DPR 517, 532-533 (2013). En específico, el Art. 15 de la Ley de Confiscaciones, *supra,* dispone lo siguiente:

> [...]
>
> Presentada la contestación a la demanda, el tribunal ordenará **una vista sobre legitimación activa para establecer si el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación**. De no cumplir con este requisito, el tribunal ordenará la desestimación inmediata del pleito.
>
> Para fines de esta Ley **se considerará "dueño" de la propiedad una persona que demuestre tener interés propietario en la propiedad incautada, incluyendo una persona que posea un gravamen sobre dicha propiedad a la fecha de ocupación de la propiedad incautada, o una cesión válida de tal interés propietario**. (Énfasis nuestro).

Ello así, el Art. 15, *supra,* protege los derechos de aquellos que tienen un interés económico o propietario en el vehículo confiscado y no han estado directamente involucrados en la actividad criminal que motiva la confiscación. Por ello, los derechos económicos de una entidad financiera y su aseguradora bajo un contrato de venta condicional podrán disfrutar de legitimación activa si se establecen los elementos que acreditan dicha condición. *MAPFRE v. ELA,* supra, pág. 530.

**B.**

El Art. 2.05 de la Ley Núm. 22-2000, mejor conocida como la *Ley de Vehículos y Tránsito de Puerto Rico* impone la obligación al secretario del DTOP de establecer y mantener un registro actualizado de todos los vehículos de motor, arrastres o

semiarrastres autorizados a transitar por las vías públicas. 9 LPRA sec. 5006. Con relación a los vehículos o vehículos de motor, el Registro contendrá, entre otras cosas, "cualquier acto de enajenación o gravamen relacionado con el vehículo o vehículo de motor o su dueño y/o conductor certificado". (9 LPRA sec. 5006 (c) (3); *Reliable v. Depto. Justicia y ELA, supra,* págs. 930-931.

Así pues, el Art. VIII (9) del Reglamento para la Imposición y Cancelación de Gravámenes bajo la Ley Núm. 22 de Vehículos y Tránsito de Puerto Rico, Reglamento 8645 de 15 de septiembre de 2015, en adelante Reglamento 8645,[12] establece lo relacionado a la inscripción de los gravámenes mobiliarios por venta condicional. En particular, el referido Artículo enumera los siguientes requisitos para los gravámenes mobiliarios:

> Imposición: Para registrar este gravamen, el acreedor garantizado o su representante someterá al Centro de Servicios al Conductor (CESCO) los siguientes documentos:
>
> **a. Formulario DTOP-770** "Solicitud Presentación Gravamen Mobiliario sobre Vehículos de Motor", debidamente completado.
>
> b. Copia de los Comprobantes de Pago de Rentas Internas del Departamento de Hacienda, correspondientes a **los derechos de anotación del gravamen mobiliario**, con el valor de quince ($15.00) dólares.
>
> **c. Copia de la hoja del documento del contrato de venta al por menor a plazos, que evidencie el monto del precio de venta del vehículo de motor.**

Por otra parte, en *Reliable v. Depto. Justicia y ELA, supra,* pág. 935-936, el Tribunal Supremo concluyó que un acreedor condicional o garantizado no puede reclamar el no haber sido notificado si no ha cumplido con su parte del proceso, con la presentación de los documentos requeridos para inscribir su derecho. Ahora bien, de igual manera el Estado no puedo ampararse

---

[12] El Reglamento Núm. 8645, reglamentación vigente a la fecha de los hechos ante nuestra consideración fue enmendado por el Reglamento Número 9578 del 12 de agosto de 2024.

en la dejadez de la agencia, en este caso DTOP, en validar los documentos correctamente presentados para justificar la falta de notificación o la notificación tardía. Por otro lado, el Estado no debe tratar de justificar la falta de notificación, en la ausencia de inscripción del gravamen en el Registro, cuando la falta de inscripción se deba a su dejadez. *Íd.*

### III.

Los apelantes alegan que el TPI erró al determinar que no posee legitimación activa. Según Toyota Credit, ésta cumplió con dicho requisito al presentar copia del Formulario DTOP-770 y contrato de venta, fechado antes que se realizara la confiscación. Por su parte, el Estado sostiene que Toyota no posee legitimación activa porque el Formulario DTOP-770 no aparece firmado por el Oficial del DTOP y tampoco hay certeza de que fue enviado.

Los apelantes tienen razón. Según reseñamos, la *Ley de Transacciones Comerciales, supra,* establece que un récord enviado a la oficina de registro será válido como un récord registrado, a menos que posteriormente la entidad lo rechace. *Reliable v. Depto. Justicia y ELA, supra,* pág. 929, Ahora bien, el Reglamento Núm. 8645, *supra,* aplicable a la inscripción de gravámenes sobre vehículos de motor, no especifica en qué momento se considerará "inscrito" el gravamen. Sin embargo, en *Reliable v. Depto. Justicia y ELA, supra,* pág. 934, el Tribunal Supremo resolvió que debe entenderse inscrito el gravamen al presentarlo ante el Registro de Vehículos de Motor, Arrastres y Semiarrastres. Pese a eso, no basta la mera presentación, sino que es necesario la presentación de todos los documentos requeridos por ley para que se entienda inscrito el gravamen. *Íd.*

De lo anterior, es claro que los apelantes cumplieron con todos los documentos requeridos por el DTOP. Art. VIII, Sección 9-a del Reglamento Núm. 8645, *supra.* Tal como se explicó, a pesar de que

aún no se había perfeccionado el gravamen en el DTOP, no significa que Toyota Credit no tuviese un interés propietario para impugnar la confiscación. Si bien es cierto que, el Formulario DTOP-770 no está firmado por el Oficial del DTOP, sí lo está por el concesionario. El Formulario DTOP-770 y el contrato de venta demuestran que, a pesar de que el gravamen fue debidamente inscrito el 9 de junio de 2022, Toyota Credit había realizado activamente todas las gestiones de inscripción. Por ello, al momento en que ocurrió la confiscación, la inscripción estaba en proceso.

Por último, el Estado no puede utilizar a su favor el incumplimiento de las agencias o de las dependencias que lo representan. *Reliable v. Depto. Justicia y ELA, supra,* pág. 935. En este caso, la tardanza del DTOP ha quedado evidenciada con una dilación en su inscripción desde que se realizó la solicitud el 29 de septiembre de 2021 hasta el 9 de junio de 2022, cuando finalmente se inscribió. Así pues, el Estado tiene el deber de notificar, aun cuando el Registro no reflejaba el gravamen a nombre de Toyota Credit. La evidencia presentada por los apelantes nos deja más que claro que tiene legitimación activa para impugnar la confiscación.

**IV.**

Por los fundamentos antes expuestos, se revoca la sentencia de desestimación contra los apelantes y se devuelve al tribunal de instancia para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones