ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| UNIVERSAL INSURANCE COMPANY Y POPULAR AUTO<br><br>Apelante<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, SECRETARIO DE JUSTICIA Y SUPERINTENDENTE DE LA POLICÍA<br><br>Apelado | TA2025AP00369 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV04153<br><br>Sobre: Impugnación de confiscaciones |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece Popular Auto (Popular Auto o el apelante) y solicita que revoquemos una *Sentencia* emitida y notificada el 26 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI).[1] Mediante el referido dictamen, el TPI concluyó que el apelante no logró rebatir la presunción de la legalidad de la confiscación efectuada de cierto vehículo de motor. Por lo cual, declaró No Ha Lugar la *Demanda* que presentó Popular Auto.

Con el beneficio de la comparecencia de las partes y por contar con la transcripción de la prueba oral (TPO) estipulada, nos encontramos en posición de resolver. Se adelanta la confirmación del dictamen apelado.

Veamos el trasfondo fáctico y procesal que sostiene nuestra determinación.

---

[1] Entrada Núm. 29 del expediente del caso CG2024CV04153 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.

**I.**

El 7 de noviembre de 2024, Universal Insurance Company (Universal) y Popular Auto presentaron una *Demanda* sobre impugnación de confiscación en contra del Estado Libre Asociado de Puerto Rico (ELA o la parte apelada).[2] Allí, alegaron que el automóvil marca KIA FORTE, tablilla JUB-360, año 2021, fue confiscado por el ELA en el municipio de Caguas, Puerto Rico. Sostuvieron que, Popular Auto era la dueña del contrato de venta condicional al momento de la confiscación y que Universal tenía una póliza de seguros expedida a favor de la entidad bancaria para cubrir el riesgo de confiscaciones. Así, indicaron que, el asegurado, el Sr. Alexander Pedraza Delgado (señor Pedraza Delgado), tenía un balance pendiente de pago por motivos del contrato de venta condicional y que la institución bancaria era un tercero inocente a la confiscación.

De igual forma, esbozaron que la referida confiscación era nula e ilegal por no haberse cumplido con los requisitos exigidos por la Ley Núm. 119 del 12 de julio de 2011, según enmendada, conocida como la *Ley Uniforme de Confiscaciones de 2011*, 34 LPRA sec. 1724 nota *et seq.* (Ley Núm. 119-2011), y por no haberse hecho la notificación a todas las partes dentro del término legal. Manifestaron que, aludida ley era inconstitucional toda vez que los privaba de su derecho propietario sobre el vehículo de interés, sin el debido proceso de ley garantizado en la Constitución de Puerto Rico y en la Constitución de los Estados Unidos de América. Finalmente, esgrimieron que la tasación hecha al vehículo confiscado fue arbitraria, injustificada e improcedente. Por lo cual, solicitaron que se decretara la invalidez de la confiscación.

En respuesta, el 6 de diciembre de 2024, el ELA presentó su *Contestación a Demanda.*[3] En esencia, negó las alegaciones de la

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC TPI.
[3] *Íd.*, Entrada Núm. 6 en SUMAC TPI.

*Demanda*. Sostuvo que, el vehículo fue ocupado por el Estado por violación al Artículo 404 de la Ley de Sustancias Controladas y los Artículos 6.05 y 6.22 de la Ley de Armas. Además, añadió que la notificación de la ocupación del vehículo se realizó dentro del término jurisdiccional para ello.

Por otra parte, señaló que, a tenor con el derecho aplicable, se presumía la corrección de la confiscación y que la parte apelante tenía el peso de la prueba para derrotar la legalidad de la misma. Asimismo, indicó que la tasación del vehículo fue realizada por personal adiestrado y respondía al valor en el mercado del vehículo confiscado al momento de realizarse la ocupación. Por último, adujo que en el presente pleito no se podía invocar la figura de tercero inocente.

El 22 de enero de 2025, se celebró la Vista de Legitimación Activa, según surge de la *Minuta Enmendada*.[4] En dicha vista, la representación legal de Universal y Popular Auto solicitó: (1) que se reconociera la legitimación activa del apelante; y (2) el desistimiento sin perjuicio de la causa en cuanto a Universal.

A tales efectos, en esta misma fecha, el TPI emitió una *Resolución Interlocutoria* donde reconoció la legitimación activa de Popular Auto.[5] De igual manera, dictó una *Sentencia Parcial* en la cual desestimó la causa de acción de Universal, sin perjuicio.[6]

Subsiguientemente, el 19 de agosto de 2025, el foro primario celebró una Vista en su Fondo en la que declaró el **Agte. José Luis Cruz Delgado** (agente Cruz Delgado). A continuación, se sintetiza su testimonio:

El agente Cruz Delgado declaró que, el 12 de septiembre del 2024, en las horas de la madrugada, se transfirió al Centro de Mando una llamada con relación a un vehículo que realizaba detonaciones

---

[4] *Íd.*, Entrada Núm. 10 en SUMAC TPI.
[5] *Íd.,* Entrada Núm. 12 en SUMAC TPI. Archivada y notificada el 24 de enero de 2025.
[6] *Íd.*, Entrada Núm. 13 en SUMAC TPI. Archivada y notificada el 24 de enero de 2025.

en la carretera 785, Kilómetro 2.0 del Barrio Cañaboncito del municipio de Caguas .[7] Sostuvo que, de la información transferida, el vehículo se asemejaba a una Hyundai de color rojo con cinco individuos a bordo.[8] Al personarse en el lugar, atestó que observó una Kia de color anaranjado.[9] Relató que, intervino con el vehículo y que, en el mismo se encontraban cinco ocupantes, entre ellos, el señor Delgado Pedraza, quien era el conductor y propietario del auto.[10]

Testificó que, bajaron a los individuos del automóvil y se les realizó un cateo sobre cada uno de ellos.[11] Señaló que, encontraron sustancias controladas en dos de los individuos.[12] Posteriormente, relató que le solicitó al señor Delgado Pedraza autorización para realizar un registro sobre el vehículo lo cual rechazó.[13] Atestó que, por tener sospecha razonable que en el automóvil se encontraba un arma de fuego, este fue sellado y transportado en una grúa de la Policía hacia el distrito de Caguas.[14] Declaró que, arrestó los cinco ocupantes del vehículo.[15] Testificó que, en el cuartel de distrito de Caguas, tras liberarse la orden, en la presencia del dueño y propietario del vehículo, se realizó un registro.[16] Expresó que, en la parte posterior del automóvil se encontró una cartera, la cual contenía en su interior, una pistola marca Glock cargada, además, que se ocupó varias municiones y dos cargadores.[17] De igual forma, manifestó que se ocupó picadura de marihuana.[18] Sostuvo que, luego de consultar con Fiscalía, se le instruyó de que el vehículo fuera confiscado.[19]

---

[7] TPO del 19 de agosto de 2025, pág. 9, líneas 9-15; pág. 17, líneas 8-14.
[8] *Íd.*, pág. 10, líneas 19-24.
[9] *Íd.*, líneas 18-19; pág. 11, líneas 1-4.
[10] *Íd.*, pág. 9, líneas 21-24; pág. 10, líneas 1-4.
[11] *Íd.*, pág. 18, líneas 4-11.
[12] *Íd.*, líneas 11-12.
[13] *Íd.*, líneas 12-19.
[14] *Íd.*, pág. 19, líneas 2-6.
[15] *Íd.*, pág. 11, líneas 5-8.
[16] *Íd.*, pág. 20, líneas 4-9.
[17] *Íd.*, líneas 9-12 y 17-20.
[18] *Íd.*, líneas 13-16.
[19] *Íd.*, pág. 22, líneas 19-21.

Así las cosas, el 26 de agosto de 2025, el foro primario emitió y notificó una *Sentencia*.[20] Mediante esta, luego de evaluar la prueba documental y testifical, formuló las siguientes determinaciones de hechos:

1. Aproximadamente a la 1:42 a.m., mientras el Agte. José L. Cruz Delgado se encontraba asignado a querellas y patrullaje preventivo junto al Sargento Medina, recibieron llamada del Sistema de Emergencias 911 donde una fémina de forma anónima informó sobre un vehículo de motor que se encontraba realizando detonaciones en la Carretera 785, Kilómetro 2.0 del Barrio Cañaboncito en Caguas, que dicho vehículo era de color rojo parecido a un Hyundai y en el interior pudo apreciar a cinco individuos, que luego de realizar las detonaciones se mantenía dando vueltas por el área. Esta llamada fue transmitida desde el Sistema 911 al Centro de Mando de la Policía de Caguas, donde la dama se mantuvo narrando los movimientos de dicho vehículo. La dama indicó que el vehículo se detuvo en la vía y que estos individuos aparentaban estar buscando algo por el área.

2. El Agte. José L. Cruz Delgado se personó al área y en el Kilómetro 2.1 observó el vehículo objeto de la confiscación. En ese momento no había tráfico vehicular. Solo estaba el vehículo objeto de la controversia.

3. El Agte. José L. Cruz Delgado intervino con el vehículo objeto de la confiscación y le ordenó al conductor detenerse, lo cual realizó.

4. Los cinco ocupantes del vehículo se bajaron. Dos de los ocupantes poseían una cartera cada uno, y firmaron el documento PPR612.1, Consentimiento a un registro, y en una de las carteras pertenecientes al joven Saúl José Rivera López encontraron en el interior de la cartera un cigarrillo y un envase cilíndrico de plástico con aparente picadura de marihuana. El otro joven de nombre Krisian Esteban Zelaya Aldrich tenía en el interior de su cartera tres cigarrillos, una bolsa con cierre a presión que leía GOKUSH. Un envase de plástico cilíndrico color negro y otro envase cilíndrico color violeta, todos con aparente picadura de marihuana.

5. La intervención de la Policía aconteció en horas de la madrugada del 12 de septiembre de 2024.

6. El Agte. José L. Cruz Delgado detuvo el vehículo de motor donde había cinco (5) ocupantes.

7. La Policía no expidió boletos de multas administrativas.

8. La policía arrestó a los cinco (5) ocupantes del vehículo de motor objeto de la confiscación.

9. El vehículo de motor en controversia fue sellado por personal de Servicios Técnicos de la Policía.

10. La prueba de campo practicada a la evidencia ocupada resultó positivo a marihuana.

11. Expedida la Orden de Allanamiento, el vehículo fue registrado y se ocupó una cartera, marca Coach, color gris y

---

[20] Ver nota al calce Núm. 1.

negra la cual tenía adentro una pistola Glock Negra modelo 19 Gen S, calibre 9 mm, la cual tenía un cargador insertado con 17 municiones y en la cartera había, además, otro cargador con 31 municiones y una munición suelta.

12. Por estos hechos se determinó causa en Regla 6 contra el propietario del vehículo de motor.

13. El vehículo de motor confiscado es un vehículo marca Kia, modelo, Forte, año 2021, con la tablilla JUB-360.

14. El vehículo de motor fue ocupado por la Policía de Puerto Rico el 12 de septiembre de 2024.

15. La orden de confiscación se expidió el 1 de octubre de 2024.

16. El dueño registral del vehículo confiscado es Alexander Pedraza Delgado.

17. La razón notificada para la confiscación del vehículo por el Estado fue por violación Art. 404 de la Ley de Sustancias Controladas.

18. En la Vista Preliminar se determinó no causa.

19. El vehículo fue tasado por el Estado en $16,500.00.

20. Popular Auto surge como tenedor de un primer gravamen sobre el vehículo de motor confiscado según el Certificado de Título expedido por el Departamento de Transportación y Obras Públicas.

Conforme a lo anterior y el derecho aplicable, el TPI determinó que mediante el testimonio del agente Cruz Delgado se estableció prueba suficiente y preponderante para concluir que se cometió un acto delictivo y el nexo causal entre el delito y la propiedad confiscada. Ante ello, concluyó que el ELA realizó su deber ministerial de confiscar el vehículo según lo dispuesto en la Ley Núm. 119-2011, *supra*.

Por otra parte, resolvió que el apelante no logró establecer su carácter de tercero inocente ya que no presentó prueba para demostrar que:

[L]a posesión del vehículo no se obtuvo por voluntad del dueño o que el dueño del vehículo tomó medidas cautelares para prevenir la actividad delictiva y que el infractor se apartó sustancialmente de las instrucciones específicas.

Así pues, juzgó que Popular Auto no logró rebatir la presunción de la legalidad de la confiscación. Por lo cual, declaró No Ha Lugar a la reclamación de epígrafe.

Inconforme, el 23 de septiembre de 2025, el apelante presentó el recurso que nos ocupa, en el que planteó que el TPI cometió el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAGUAS AL DECLARAR NO HA LUGAR LA DEMANDA DE IMPUGNACIÓN DE CONFISCACIÓN Y AL DETERMINAR QUE LA PARTE DEMANDANTE NO LOGRÓ REBATIR LA PRESUNCIÓN DE CORRECCIÓN Y LEGALIDAD QUE COBIJA LAS CONFISCACIONES SEGÚN LAS DISPOSICIONES DE LA LEY NÚM. 119-2011.

Popular Auto alegó que el TPI erró en determinar que el apelante no logró rebatir la presunción de corrección y legalidad que cobija las confiscaciones al amparo de la Ley Núm. 119-2011, *supra*. En primer lugar, arguyó que el foro *a quo* incidió en determinar que los cinco (5) ocupantes del vehículo firmaron el documento PPR612.1 sobre consentimiento al registro, a pesar de que el Estado no trajo como prueba dichos documentos, por lo que no formaron parte del expediente judicial. En este sentido, sostuvo que los ocupantes no firmaron ningún documento para que se les registrara a ellos en el momento de la intervención ni existía alguna Orden en ese momento.

De igual forma, esbozó que, según el testimonio del agente Cruz Delgado, la llamada confidencial describió un vehículo parecido a un Hyundai rojo, sin embargo, que el confiscado fue un Kia anaranjado. Además, añadió que mencionado agente no vio que de dicho vehículo se haya realizado las detonaciones. A tales efectos, indicó que el Estado no tenía motivos fundados para solicitar una Orden de Registro y/o Allanamiento, ni existía una Orden de Arresto sobre el imputado al momento de encontrar el arma y la droga en el automóvil. Por lo cual, razonó que el TPI debió haber determinado que el registro al vehículo fue uno ilegal e improcedente, ya que no existía nexo para validar la confiscación realizada por el ELA. Por último, manifestó que impugnó la admisibilidad de las pruebas de campo debido a que el agente Cruz Delgado no fue quien preparó las

mismas, empero, el foro primario permitió la admisibilidad del documento.

Por su parte, el ELA alegó que la intervención inicial con el vehículo confiscado ocurrió debido a que el agente Cruz Delgado y el Sargento Jose Medina respondían a la información brindada en una llamada anónima. Indicó que, dicha llamada hizo referencia a un vehículo parecido a un Hyundai rojo con cinco (5) ocupantes que se encontraba en el Kilómetro 2.0 de la Carretera 785, realizando detonaciones. Así, esbozó que en mencionado lugar no había tráfico y el automóvil se encontraba en el sitio exacto según indicado en la llamada. Ante ello, argumentó que el agente Cruz Delgado identificó correctamente el vehículo confiscado y que tenía motivos suficientes para concluir que los ocupantes habían cometido un delito.

A tales efectos, la parte apelada hizo referencia a las declaraciones ofrecidas en el testimonio de dicho agente. En particular, señaló que cuando intervinieron con el vehículo y se realizó el cateo, en dos de los individuos se encontró sustancias controladas. Por lo que, sostuvo que los agentes actuaron correctamente al arrestar los ocupantes y obtener una orden para el registro del vehículo. Así, adujo que el resultado del registro validó la ocupación y eventual confiscación del vehículo en controversia. Por ende, arguyó que el apelante no logró rebatir la presunción de corrección y legalidad que cobijan las confiscaciones realizadas al amparo de la Ley Núm. 119-2011, *supra*. Finalmente, esgrimió que Popular Auto no presentó evidencia que demostrara que hubo pasión, prejuicio, parcialidad o error manifestó en el dictamen apelado, por lo cual, se merece entera deferencia por parte de este foro revisor.

## II.

### Ley Uniforme de Confiscaciones

A través de la confiscación se le confiere al Gobierno el título de aquellos bienes utilizados para fines ilícitos al amparo de cualquier

estatuto que así lo autorice. Ley Núm. 119-2011, 34 LPRA sec. 1724f. En otras palabras, la confiscación es el acto mediante el cual el Estado se adjudica bienes que han sido utilizados para la comisión de determinados delitos. *Reliable Financial v. ELA*, 197 DPR 289, 296 (2017); *Reliable v. Depto. de Justicia y Otros*, 195 DPR 917, 924 (2016); véase también, *Doble Seis Sport TV v. Depto. Hacienda*, 190 DPR 763 (2014); *Rodríguez Ramos v. ELA*, 174 DPR 194, 202 (2008). En nuestra jurisdicción, el proceso de confiscación está regulado por la Ley Núm. 119-2011*, supra*, la cual establece en su Artículo 2, como política pública del Estado Libre Asociado de Puerto Rico "el crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles." 34 LPRA sec. 1724 nota.

El proceso de confiscación es civil y de naturaleza *in rem* y va dirigido contra la propia cosa, la cual, por ficción legal, se considera la ofensora, y no contra su dueño, poseedor o encargado, o la persona con interés. *Reliable Financial v. ELA, supra*, págs. 296–297; *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 787; véanse, además: Exposición de Motivos y el Art. 8 de la Ley Núm. 119-2011*, supra*, 34 LPRA sec. 1724e. La referida Ley también reafirma que esta acción es independiente de cualquier acción de naturaleza penal, administrativa u otra naturaleza. 34 LPRA sec. 1724e. Conforme a ello, la culpabilidad o inocencia del acusado resulta un hecho inmaterial para establecer que "el bien confiscado no ha sido utilizado en alguna actividad delictiva". *Íd.*; *CSM v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025).

A tales efectos, para que una confiscación civil sea procedente debe cumplir con los siguientes dos (2) requisitos esenciales: (1) "debe existir prueba suficiente y preponderante de que se ha cometido un delito" y (2) "debe demostrarse que existe un nexo entre la comisión del delito y la propiedad confiscada". *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 466 (2023). Es preciso señalar que, el Artículo 15 de la Ley Núm. 119-2011*, supra*, estableció una presunción de legalidad y

corrección de la confiscación realizada, por ende, quien la impugne tendría el peso de la prueba para derrotar la misma. 34 LPRA sec. 1724l.

Por otra parte, el Artículo 8 de dicha Ley dispone que no será de aplicación la doctrina de impedimento colateral por sentencia en los procedimientos de confiscación "en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en la cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito". 34 LPRA sec. 1724e. Ante ello, una determinación de no causa probable en una vista preliminar en alzada, por si sola, "no constituye una adjudicación expresa de que el vehículo confiscado no ha sido utilizado en actividad criminal alguna". *CSM v. ELA*, *supra*.

Por último, sobre la naturaleza civil del proceso confiscatorio, nuestro Tribunal Supremo ha expresado que, "[i]ndependientemente de la naturaleza civil de la confiscación[,] los estatutos confiscatorios deben interpretarse restrictivamente ya que, a pesar de tratarse de una acción de naturaleza civil, la forma en que es aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan un propósito punitivo". *Reliable Financial v. ELA*, *supra*, pág. 297; *Doble Seis Sport v. Depto. Hacienda*, *supra*, pág. 789; *Santiago v. Spte. Policía de PR*, 151 DPR 511, 515 (2000).

### III.

En el presente caso, Popular Auto planteó que el TPI erró en determinar que no se logró rebatir la presunción de corrección y legalidad que cobija las confiscaciones al amparo de la Ley Núm. 119-2011, *supra*. En esencia, arguyó que el Estado carecía de motivo fundado para intervenir con el vehículo confiscado. De igual forma, alegó que los integrantes del vehículo no firmaron ningún documento para que se le registrara en el momento de la intervención ni existía alguna orden en ese momento.

De entrada, destacamos que el planteamiento presentado por el apelante en cuanto la ausencia de motivos fundados carece de mérito. Así, por resultar indispensable a nuestra discusión haremos referencia al TPO de la vista celebrada el 19 de agosto de 2025.

Primeramente, el agente Cruz Delgado declaró que, conforme a la llamada confidencial, un vehículo similar a un Hyundai, de color parecido a rojo, realizaba detonaciones en la Carretera 785, Kilómetro 2.0 del Barrio Cañaboncito del Municipio de Caguas.[21] Testificó que, al acudir a dicho lugar observó un Kia, anaranjado.[22] Atestó que, dicha área era una carretera rural, vacía, donde en el transcurso de dos a tres kilómetros no transitó ningún vehículo.[23] Por tal motivo, relató que intervino con el vehículo Kia toda vez que ostentaba un color similar al descrito en la llamada anónima.[24]

Así las cosas, durante la intervención del vehículo el agente Cruz Delgado declaró que:

> [P]or medidas de seguridad se bajan a esos individuos, se realiza un cateo sobre, ¿verdad?, sobre cada una de las personas. En dos de ellos se encontraron sustancias controladas. Y posteriormente se le... me le acerqué al conductor, quien se identifica como propietario de dicho vehículo, Alexander Pedraza, solicitándole si éste me autorizaba a realizar un registro sobre ese vehículo.[25]

Ante la negatoria del registro del señor Pedraza Delgado, el mencionado agente testificó que por tener una sospecha razonable de que en el vehículo se encontraba un arma de fuego, este fue sellado y transportado en grúa hacia el cuartel de distrito de Caguas donde se mantuvo bajo custodia para que se realizara las gestiones pertinentes para obtener una orden de allanamiento.[26] Librada la orden de allanamiento, relató que:

---

[21] TPO del 19 de agosto de 2025, pág. 9, líneas 11-15; pág. 10, líneas 15-24.
[22] *Íd.*, líneas 14-19.
[23] *Íd.*, pág. 17, líneas 17-22.
[24] *Íd.*, pág. 10, líneas 10-24; pág. 11, líneas 1-4.
[25] *Íd.*, pág. 18, líneas 6-17.
[26] *Íd.*, líneas 18-19; pág. 19, líneas 2-6 y 13-17.

> En la parte posterior de dicho vehículo se encontró una cartera, la cual contenía en su interior un arma de fuego, una pistola marca Glock.[27]

De igual forma, atestó que la arma estaba cargada y que se ocupó varias municiones y dos cargadores, así como picadura de marihuana.[28] En virtud de lo anterior, el foro primario mediante el testimonio de referido agente quedó convencido de que existía prueba suficiente y preponderante para concluir que en efecto se cometió un delito, y que, a su vez, existía un nexo entre el acto delictivo y la propiedad confiscada.

Ahora bien, nuestro máximo foro ha descrito los motivos fundados como aquel conocimiento e información que posee una persona ordinaria y prudente para inferir que el arrestado cometió un delito. *Pueblo v. Nieves Vives*, 188 DPR 1, 14 (2013). Dado eso, ha expresado que *motivos fundados* es sinónimo a *causa probable. Íd.* Por tal razón, para determinar si un arresto llevado a cabo sin una orden cumple con el requerimiento de causa probable se debe evaluar "la información con la que contaba el agente que realizó el arresto, así como el cuadro factico que tenía ante sí". *Pueblo v. Pérez Rivera*, 186 DPR 845, 864 (2012)

Por otra parte, el proceso de confiscación es uno de naturaleza civil que va dirigido contra la propia cosa, la cual, por ficción jurídica, se considera la ofensora y no contra su dueño, poseedor o encargado, o la persona con interés. *Reliable Financial v. ELA, supra*, págs. 296–297; *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 787; véanse, además: Exposición de Motivos y el Art. 8 de la Ley Núm. 119-2011, *supra*, 34 LPRA sec. 1724e. Así, para que la procedencia de una confiscación al amparo de la Ley Núm. 119-2011, *supra*, se sostenga se debe demostrar prueba suficiente y preponderante de que se ha cometido un delito y que exista un nexo entre la comisión del delito y

---

[27] *Íd.*, pág. 20, líneas 9-12.
[28] *Íd.*, líneas 14-20.

la propiedad confiscada. *Universal Ins. y otro v. ELA y otros, supra*, pág. 466.

De igual forma, cabe precisar que a las confiscaciones les asiste una presunción de legalidad y corrección, por ende, quien las impugne le recae el peso de la prueba para derrotar la mismas. 34 LPRA sec. 1724l. Además, en dichos procesos resulta inaplicable la doctrina de impedimento colateral por sentencia en ausencia de adjudicación expresa en cualquier otro procedimiento en la cual se determine que el bien confiscado no fue utilizado en alguna actividad delictiva. 34 LPRA sec. 1724e.

Establecido lo anterior, el vehículo confiscado se encontraba en el lugar señalado, en un área donde no había movimiento vehicular y era de un color parecido al descrito en la llamada confidencial. Por lo cual, concluimos que, ante las circunstancias del caso, el agente tenía motivos fundados para intervenir con el vehículo de interés. Como resultado, se encontró sustancias controladas sobre dos de los integrantes, al igual que un arma de fuego, cargadores, municiones y picadura de marijuana en el vehículo confiscado tras liberarse una orden de allanamiento.

Dicho esto, es norma reiterada que "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión" los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos realizadas por el TPI. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022). Así pues, tras no encontrar los elementos previamente enunciados en el dictamen apelado, le otorgamos deferencia a las determinaciones de hecho formuladas por el foro primario. A tales efectos, establecida la comisión de un delito y su nexo con la propiedad confiscada y dado que Popular Auto no logró rebatir la presunción de legalidad que cobija las confiscaciones al amparo de la Ley Núm. 119-2011*, supra,*

resulta forzoso confirmar la sentencia impugnada. En consecuencia, mantenemos la legalidad de la confiscación realizada por el ELA.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* apelada.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones